11 LEON A. CANNIZZARO, JR., Judge.
The State of Louisiana filed a bill of information charging the defendant, Francis E. Gorby, with attempted second degree murder in violation of La. R.S. 14:27(30.1). Following trial, a twelve-member jury found the defendant guilty of the responsive verdict of aggravated battery, La. R.S. 14:34. La.C.Cr.P. art. 814(A)(4). The trial court sentenced him to serve ten years at hard labor; the sentence is to be served concurrently with any other sentence the defendant may be serving. The defendant appealed.
FACTS
Courtney Bateman, the victim, testified that she and her husband, the defendant, met at an apartment on Camp Street that they were thinking of renting. When the defendant arrived, Ms. Bateman told him that she wanted to leave him. He became very upset, and as she tried to leave, he pushed her to the floor. She hit her head, injuring her eye, which bled profusely. Ms. Bateman went to the bathroom thinking that she could climb out the window. However, the defendant pulled her from the window and threw her to the floor; he then beat her head against the toilet. After that the defendant dragged her to the living room and kicked and beat her repeatedly. Ms. Bateman screamed, and he put duct tape over her mouth and kept beating her on the head with a billy club or stick. Ms. Bateman said that she and her husband had talked of committing suicide *195 together, and when she told him that afternoon that she would not kill herself, he told her “he was going to kill me if I didn’t kill myself.” Ms. Bateman managed to get the tape from her mouth and began screaming. Shortly afterward, she heard sirens. She ran Lout the door and down the steps where she met the police officers who were coming up the steps. She was taken to the hospital and treated for a broken neck, skull fracture, broken eardrum, three broken ribs, bruised liver, sprained wrist, and various cuts and bruises. The beating lasted three to four hours. At the time of trial, she was still undergoing treatment and expected to have another surgery on her neck. Dr. Najeeb Thomas, the chief resident in neurosurgery at Charity Hospital, testified that he performed a cervical neck fusion on Ms. Bateman. He took a bone plug from her hip and used it to stabilize her spine. He also put a titanium plate in her spine to hold it in place. The operation was necessary because the injury to her spine had made her vulnerable to severe consequences — such as becoming paralyzed or sudden death — from any further slight insult to her spine. When asked if the injuries Ms. Bateman received were life-threatening, the doctor stated that leaking spinal fluid could have resulted in meningitis, but the leakage stopped spontaneously. He reiterated that her neck injury was so severe that a minor jolt to her spine could have devastating results. He said that in the months since her surgery Ms. Bateman’s neck has progressed toward a fusion but it had not completely healed.
Detective Martin Thiry testified that he answered a call concerning a woman screaming for help, and he found the victim in front of the building in a catatonic state. She told the officer that someone tried to kill her. The detective called for medical help for her and began searching the building. He found an apartment with the door ajar and saw a trail of blood through the rooms leading to the bathroom. It was obvious a struggle had occurred in the apartment. He noticed the condition of the bathroom window and concluded that someone had left the apartment for the ^backyard via the window. The detective searched the backyard and found the defendant at one end. When Detective Thiry turned the flashlight beam on him, the defendant said, “[W]e were supposed to die together.” The defendant was ordered to show his hands and get on the ground. He did not respond, and the detective used pepper spray on him; at that time the defendant dropped a knife, but he did not fall to the ground. Several officers were able to subdue him. When he was placed in the police car, the defendant tried to kick out the windows. He was taken to the hospital. After being given his Miranda rights, the defendant told the officer that he and the victim had entered into a suicide pact, and, after he cut his wrists, the victim changed her mind and would not go through with it. He “resolved to show her how to do it.” The detective acknowledged that Mr. Gorby had cuts on his wrist.
ASSIGNMENT OF ERROR
In a single assignment of error, the defendant complains that his sentence is excessive.
STANDARD OF REVIEW
Article I, § 20 of the Louisiana Constitution of 1974 provides that “[n]o law shall subject any person ... to cruel, excessive or unusual punishment.” A sentence, although within the statutory limits, is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless and needless imposition of pain *196 and suffering.” State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir.1985). However, the penalties provided by the 1 legislature reflect the degree to which the criminal conduct is an affront to society. State v. Brady, 97-1095 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264.
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Black, 98-0457, p. 8 (La.App. 4 Cir. 3/22/00), 757 So.2d 887, 892. If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case. State v. Caston, 477 So.2d at 871. The reviewing court must also keep in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982).
The trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
DISCUSSION
La. R.S. 14:34, the aggravated battery statute, provides for a fine of not more than five thousand dollars and a sentence with or without hard labor of not more than ten years. The trial court sentenced the defendant to ten years at hard labor and stated that he imposed the sentence “because of the severity of the injuries suffered by the victim.” The defendant argues that he does not deserve the maximum sentence for aggravated battery and that the trial court should have considered mitigating factors.
|/We disagree. Nothing justifies this offense, which could have resulted in even more serious injuries to or the death of Ms. Bateman. Furthermore, we do not find the challenged sentence to be excessive or grossly disproportionate to the seriousness of the crime under the circumstances established in the record.
In State v. Brown, 2003-0732 (La.App. 4 Cir. 7/23/03), 853 So.2d 665, the defendant, who was sentenced to ten years after being convicted of aggravated battery, argued that his sentence was excessive, and this Court affirmed the sentence noting that the defendant inflicted life-threatening injuries on the victim. Similarly in State v. Hawkins, 95-0028 (La.App. 4 Cir. 3/29/95), 653 So.2d 715, this Court affirmed a ten-year sentence for a first offender convicted of aggravated battery.
This sole assignment of error is without merit.
CONCLUSION
Accordingly, the defendant’s conviction and sentence are affirmed.
AFFIRMED.