JONES, Judge.
 

 11William Moss appeals his conviction for the offense of aggravated battery and his sentence for that offense to a period of incarceration at hard labor for eight (8) years. We affirm his conviction and sentence.
 

 Moss was charged in a two count bill of information with aggravated battery in violation of La. R.S. 14:34 and violation of La. R.S. 14:107.2, which augments punishment for “hate crimes.” Prior to trial, the State amended the bill of information to correct a grammatical error. Also prior to trial, Moss was arraigned and pled not guilty. At that time, the district court noted that the jury had been sworn and jeopardy had attached. The jury returned a verdict of guilty for the aggravated battery charge and not guilty for the hate crime charge.
 

 Moss filed a notice of intent to seek a writ application, which was granted, and an appeal bond was set at that time. Moss timely filed his writ application in this Court wherein he challenged the bill of information (Assignment of Error Number 1 in this appeal) and the jurisdiction of the district court (Assignment of Error Number 3 in this appeal). The writ application was denied with the notation that Moss had an adequate remedy on appeal.
 

 |2The district court noted that the request for a sentencing report had erroneously listed Moss as having been convicted of the hate crime and ordered the court secretary to contact the Department of Probation and Parole to determine the status of the report. Subsequently, Moss was sentenced to eight years at hard labor with credit for time served. Moss then filed a Motion to Reconsider Sentence, which the district court denied. Thereafter, he filed a Notice and Motion to File for Appeal, which was granted. The district court denied post trial motions for post judgment verdict of acquittal, arrest of judgment, and a new trial. The district court then vacated Moss’ original sentence. Moss waived sentencing delays, and the district court resentenced him to eight years at hard labor. The district court also granted a motion for appeal and designation of record.
 

 Sergeant Lawrence Dupree of the New Orleans Police Department testified at trial that he responded to an aggravated battery call at approximately 10:47 p.m. on May 31, 2006. He met with the victim, Lazerick Jones, in the 1100 block of Magazine Street in Orleans Parish, near the intersection of Magazine and Race Streets,
 
 *444
 
 at approximately 11:00 p.m. He observed Mr. Jones covered in blood and that he was bleeding from the head. The red shirt and white shorts he wore were “heavily blood stained.” There was also blood on the sidewalk. Mindy Moss (“Ms. Moss”) — the defendant’s daughter' — was with Mr. Jones.
 

 Upon interviewing Mr. Jones, Sergeant Dupree learned that Ms. Moss was Mr. Jones’ girlfriend and that the two had recently graduated from high school. In light of their graduation, the couple had been invited to visit New Orleans by Moss. Ms. Moss intended to spend the rest of the summer with her father.
 

 Moss had treated Mr. Jones and his daughter to dinner, and afterwards, he was supposed to take the couple home. However, during dinner, Moss repeatedly | Sused the “N” word during the conversations. From interviewing Mr. Jones, Sergeant Dupree concluded that Moss had battered Mr. Jones.
 

 Sergeant Dupree learned that Moss lived on Palmer Street. He went there and found a white pickup truck outside. Blood stains were on the bed of the truck, and a knife was in plain sight in the cab of the truck. Moss had also left an identification card hanging on the mirror. Another identification card was discovered near a trailer.
 

 After an unsuccessful search in the area for Moss, Sergeant Dupree had the vehicle towed to the Sixth District Police Station. He then obtained a warrant to search the vehicle. The search produced a hunting knife in a brown leather case, a Texas inspection report, a Texas insurance card, a Dodge Ram sales sticker, Moss’ identification card, an envelope addressed to Moss, and a mobile telephone. Photos of Mr. Jones and the sidewalk on Race Street were introduced at trial and viewed by the jury.
 

 Approximately one or two days after the incident, Moss met with Sergeant Dupree at the Sixth District Police Station. He complained of pain in his arm and leg, but refused an offer of emergency medical services treatment, while Sergeant Dupree observed no bruising. Moss was placed under arrest and read his rights. Moss volunteered to Sergeant Dupree that Mr. Jones and his daughter had been drinking.
 

 On cross examination, Sergeant Dupree testified that he did not have the blood at the crime scene tested. Thus, it could have come from either Mr. Jones or Moss.
 

 During the investigation, no one indicated to Sergeant Dupree that Mr. Jones ever attacked Moss. Sergeant Dupree marked on his police report that Mr. Jones |4had consumed alcohol because Mr. Jones admitted such to him. However, Sergeant Dupree smelled no alcohol when he interviewed Mr. Jones. The interview occurred some fifteen to twenty minutes after the incident.
 

 Sergeant Dupree was called back to the stand toward the end of trial. He testified that Moss told him “those kids had been drinking alcohol.”
 

 Detective Claudia Bruce testified at trial that her sole involvement in this case was arresting Moss and transporting him to prison. While traveling in the police car, Moss stated that the “children,” his daughter and her boyfriend, attempted to steal beer from him. Det. Bruce got the impression that Moss was attempting to provide an excuse or justification for his action.
 

 Lazeriek Antoine Jones is the victim in this case, and he testified at trial that, he is from Dallas, Texas, and was seventeen years old on May 31, 2006. Mr. Jones knows Moss through his daughter, Ms. Moss. He has known Ms. Moss since their
 
 *445
 
 freshman year of high school, and he has met several members of Ms. Moss’ family. He did not meet Moss until the day Ms. Moss and he graduated from high school, on or about May 23, 2006.
 

 Mr. Jones testified that on May 30, 2006, Moss drove Mr. Jones and Ms. Moss to New Orleans from Texas. During the trip, Moss referred to Mr. Jones as a “nigger” and to Ms. Moss as a “nigger-lette” on several occasions. Despite mixed feelings about these names, Mr. Jones ignored them. The trio arrived in New Orleans late that night and retired to Moss’ trailer.
 

 The following morning — May 31st — the trio woke up early, planning to eat breakfast. Ms. Moss and Mr. Jones planned to go sight-seeing while Moss went to work. After breakfast, Mr. Jones and Ms. Moss checked into a hotel and took a nap for several hours. Before leaving for work, Moss handed Mr. Jones a |,^screwdriver, explaining it was for protection. Mr. Jones left the screwdriver in the hotel. Moss subsequently picked the couple up and took them to “jazz in the park”. They arrived at the park at approximately 4:00 or 5:00 p.m. While there, Mr. Jones consumed two cups of beer. Moss sat with friends while Mr. Jones and Ms. Moss walked around. After approximately an hour, Moss and a friend of his took Mr. Jones and Ms. Moss to a friend’s house before going to a restaurant for dinner. The dinner party included Ms. Moss, Mr. Jones, Moss, and two of Moss’ friends. Moss offered Mr. Jones drinks several times, but Mr. Jones testified that he declined because he was not feeling well. Mr. Jones further testified that during dinner he did not converse with Moss because it was an opportunity for Moss to be with his daughter.
 

 After dinner, Moss drove Mr. Jones and Ms. Moss to their hotel. However, Moss
 

 did not stop when they arrived at the hotel. Instead, Moss drove by the hotel and proceeded to “a dark area where no one could see” and parked the car. Upon exiting the vehicle, Moss told his daughter to go retrieve some bicycles from the hotel courtyard. Ms. Moss left. Mr. Jones testified that Moss had a pair of pliers in one of his hands and a screwdriver or knife in the other. Moss asked Mr. Jones if he was armed, but Mr. Jones was not. He had left the screwdriver in the hotel room and was not in the habit of carrying a weapon. Moss handed Mr. Jones a weapon. As Mr. Jones looked at Moss, wondering why he had given him the weapon, Moss hit him with the pliers once. Mr. Jones fell to the ground, and Moss got on top of Mr. Jones and hit him several more times with his fists.
 

 Ms. Moss subsequently returned and attempted to get her father off Mr. Jones. People at a nearby coffee shop also came to Mr. Jones’ rescue. Mr. Jones denied ever arming himself or hitting back. As the two separated, each went to an |fiopposite side of the truck. Moss attempted to taunt Mr. Jones, exclaiming, “Are you going to fight me like a nigger, or are you going to run like a white boy?” Then, the police arrived. Mr. Jones was under the impression that the police responded to a call from people at the coffee shop.
 

 Mr. Jones was bleeding from his head and had blood on his clothes. Pictures of Mr. Jones after the incident were introduced at trial. When the police arrived, they interviewed Mr. Jones, and Emergency Medical Services cleaned his wounds. The police then took Ms. Moss and Mr. Jones to Moss’ trailer. Moss’ truck was parked outside, but Mr. Jones did not see Moss. Ms. Moss and Mr. Jones were then taken to their hotel to retrieve their belongings before being dropped off at the
 
 *446
 
 bus station. They took a bus home the following day.
 

 Ms. Moss was not at her father’s trial. However, Mr. Jones testified that he and Ms. Moss had spoken since the incident. They avoided speaking about the incident in their conversations. Mr. Jones thought he got along with Moss when they first met. He denied owing Moss money or ever living with him. He also denied ever stealing from Moss, mistreating his daughter, or directing derogatory racial remarks at Moss.
 

 On cross examination, Mr. Jones testified that he had had dinner at Ms. Moss’ mother’s home. He went to New Orleans to provide company to Ms. Moss and intended to see family while he was there. On the date of the incident, the two beers he drank were provided by Moss. They did not have an effect on him.
 

 A tape of the “911” call of May 31, 2006, was introduced at trial and played for the jury. The district court noted that, “it’s all over these 911 tapes that this occurred within the City of New Orleans.”
 

 [ 7Robert Manley testified at trial that he had known Moss for approximately two years at the time of trial. Mr. Manley recalled that at approximately 5:15 or 5:30 p.m. on May 31, 2006, he met Moss at a free concert at Lafayette Square. He was introduced to Moss’ daughter and her friend. They remained at the concert for approximately an hour and a half. During this time, Mr. Manley did not see Moss purchase any alcoholic beverages for Mr. Jones, nor did he observe Mr. Jones consume any alcoholic beverages.
 

 On cross examination, Mr. Manley testified that there were times when he was watching the band and was not paying attention to Moss’ actions. Moss was not drinking at the event. Mr. Manley purchased several beers, but Moss was not with him when he did so. Mr. Manley did not hear Moss speak to Mr. Jones in a derogatory manner at any time during the event.
 

 Ronald Richey also testified at trial, that he had known Moss for almost three years by the trial date. According to Mr. Rich-ey, there was a band playing at Jackson Square on May 1, 2006[sic].
 
 [1]
 
 He arrived at Jackson Square at approximately 6:00 or 7:00 p.m. At approximately 8:00 p.m., he ate dinner at the Saltwater Grill with Moss, Moss’ daughter, and her friend. During this event, Mr. Richey did not observe Moss purchase any alcoholic beverages for nor make any derogatory references to Mr. Jones. Moss had a beer. Mr. Richey observed Mr. Jones was not talking and appeared to be angry. The group departed, and Mr. Richey left the others at approximately 10:00 p.m.
 

 William Moss testified at trial that he is a good friend of the athletic director at Mesquite High School, where Mr. Jones and Ms. Moss graduated from high Isschool. Moss followed Mr. Jones’ high school basketball career. Moss shared the house that Mr. Jones testified he had been to when he went to Ms. Moss’ mothers’ house.
 

 Moss had been in New Orleans working as an insurance adjuster when he brought Mr. Jones and his daughter to the city. He had almost completed his work, and his daughter wanted to visit the city. When his daughter came, she wanted to bring Mr. Jones.
 

 Moss attended his daughter’s high school graduation and extended an invitation to Mr. Jones at that time, and the visit was to last some ten days. On May 30,
 
 *447
 
 2006, Moss arrived in New Orleans with Mr. Jones and Ms. Moss at approximately 9:30 or 10:00 p.m. That night, they slept in Moss’ motor home.
 

 The following day started early because Moss had to go to work. After waking Mr. Jones and Ms. Moss, Moss gave them mountain bikes for touring and showed them a few places to go. Moss intended to get a room at a bed and breakfast next to Audubon Park, but Mr. Jones and Ms. Moss checked into another hotel. Moss did not understand how they could get their own room because they were both only seventeen years old, and he had only given them twenty dollars each. Moss found out about the hotel room later in the day.
 

 Moss’ friend, Mark, picked him up after work at approximately 4:00 p.m. They picked Mr. Jones and Ms. Moss up at their hotel and went to Jackson Square. Mark had an ice chest full of alcoholic beverages and began drinking earlier in the day.
 

 At Jackson Square, Moss’ friend Randy joined him. Ms. Moss stayed with them, while Mr. Jones went “across the street over where there were a bunch of people.” At approximately 6:30 or 7:00 p.m., Moss, Ms. Moss, Mark and Randy |gmet by Randy’s scooter. Everyone but Randy then drove to the Salt Water Grill for dinner.
 

 Dinner took several hours. Moss ordered a pitcher of beer, which he consumed with “Ron” and “one other guy.” Moss denied buying alcohol for Mr. Jones or his daughter.
 

 Dinner ended at approximately 9:45 or 10:00 p.m. Mark took the group in his car back to Moss’ truck. Apparently, the ice chest in Mark’s car belonged to Moss. Moss took the alcoholic beverages out of the cooler so he could take the ice chest back. Moss took the ice chest and got in his truck. Apparently, Ms. Moss and Mr. Jones got in the truck too. When they arrived at the hotel, the front of the hotel was crowded. Moss explained that Magazine Street is a busy street. He proceeded around the block and parked on a side street next to the hotel. There were no street lights nearby and it was dark. Accordingly, Moss instructed his daughter to go get the bicycles. However, immediately after stating this fact, Moss changed his story during his trial testimony, stating he had actually dropped his daughter off at the front gate to the hotel and she said she would get the bicycles. Moss drove the truck “around” with Mr. Jones and waited. However, Ms. Moss did not return.
 

 Moss testified that he told Mr. Jones to wait in the truck because he had property in the bed of the truck, and he went to check on his daughter. When he found her, she informed him that the bikes had been stolen. Moss went in search of the hotel manager. When no one was found at the front desk, Ms. Moss went “back in the hotel,” and Moss returned to his truck.
 

 Upon arriving at the truck, Moss observed Mr. Jones handing a man one of his skill saws. Moss also testified that he saw Mr. Jones hand the other man “a |10drink, a beer or something” from the ice chest. Moss told Mr. Jones to put the beer back and that it did not belong to Moss.
 
 [2]
 
 Then, Mr. Jones “swung” at Moss. Mr. Jones had a screwdriver because Moss had given it to him to pry the bicycle lock open. The screwdriver was in Mr. Jones’ hand. Moss put his hand up to block Mr. Jones, and the screwdriver stabbed Moss’ right hand. Moss explained that the resulting bleeding was the source of the blood on his truck. Moss then struggled with Mr. Jones to get
 
 *448
 
 into the truck bed. During this struggle, Mr. Jones “stomped” Moss’ foot. Mr. Jones fell out of the passenger side onto the concrete.
 

 During this incident, there was a man in a dark area down the street. Another “kid” ran up to Moss, and a third approached Moss on a skateboard. Ms. Moss subsequently reappeared in a hysterical state. At that point, Moss pushed the skateboarder onto the ground, got in his truck, and fled.
 

 Upon returning home, Moss sought the help of neighbors who took him to the hospital. He spent the night at a friend’s house.
 

 Moss raises eleven (11) assignments of error on appeal:
 

 1. Bill of information is deficient because the district attorney’s signature is illegible;
 

 2. Record is deficient because it does not show the jury was sworn in;
 

 3. The State failed to prove the charged offense occurred in Orleans Parish;
 

 4. Due process and equal protection clauses of the U.S. and Louisiana constitutions were violated when the charges of aggravated battery and a race hate crime were tried at the same time;
 

 5. The district court erred by issuing sentence prior to considering post trial motions;
 

 |n6. The sentence imposed is excessive;
 

 7. The sentencing report was prejudicial because it erroneously noted a race hate crime conviction;
 

 8. The district court improperly considered charges of racial motivation in sentencing;
 

 9. The district court improperly considered the following facts at sentencing because they were not in the record: a) Moss’ law enforcement experience, b) the victim — a juvenile — drank beer while with Moss, c) the district court’s belief that Moss perjured himself on the stand, and d) a witness’s failure to appear at trial. The district court improperly refused to consider the mitigating factor of Moss’ health. The district court’s finding that Moss presents an undue risk to society controverts the sentencing report, which shows that Moss is a first time offender without any previous arrests or a history of violence. The district court’s findings that the victim suffered permanent injury and significant economic loss controvert the record;
 

 10. The district court erred in not ordering that the sentence be served with the benefit of parole or diminution of sentence pursuant to La. R.S. 15:571.3(B)(2)(a); and
 

 11. The record contains insufficient evidence to support the aggravated battery conviction.
 

 The record reveals no errors patent.
 

 In his first assignment of error, Moss argues that his due process rights were violated because the assistant district attorney’s signature on the bill of information is illegible. He argues that this issue was preserved for appeal when his trial attorney objected to a late arraignment based on arraignment being “essential to the process” and “go[ing] to the heart of the speedy trial.” He points to no written motion to quash the bill of information. The State argues that any defects in the 112bill of information were waived by failure to file a written motion to quash. The State also argues that no prejudice has resulted from the illegible handwriting.
 

 
 *449
 
 The bill of information reflects what was originally filed on behalf of the State by Assistant District Attorney George T. Bourgeois, Esq. The bill of information is also signed. Though not legible, this signature presumably belongs to the filing Assistant District Attorney, Mr. Bourgeois.
 

 Immediately prior to trial on February 11, 2008, the “STATE AMENDED BILL OF INFORMATION (GRAMATICALLY).” Charge 2 changed the following from “COMMITTED AGGRAVATED BATTERY SELECTED LAZERICK JONSE ON BASIS OF RASE” to “COMMITTED AGGRAVATED BATTERY HAVING SELECTED LAZERICK JONES AS HIS VICTIM ON BASIS OF RACE.”
 

 Moss’ argument — that the indictment is flawed because the district attorney’s signature is illegible, not because there was no signature — is novel and has not been raised before. However, this court has addressed the failure to sign a bill of information. In
 
 State v. Lee,
 
 94-2584 (La.App. 4 Cir. 1/19/96), 668 So.2d 420, this court held that failure to sign a bill of information is a “formal defect only” that must be raised before trial by demurrer or motion to quash. 94-2584 at p. 3, 668 So.2d at 424,
 
 citing State v. White,
 
 404 So.2d 1202, 1205 (La.1981). Otherwise, the issue is waived.
 
 Id.
 
 Moss has failed to show that he timely and properly objected to the signature on the bill of information. The record contains no motion to quash, challenging the assistant district attorney’s signature pursuant to La.C.Cr.P. art. 534(1)(relating to failure of the district attorney to sign an information). Moreover, his objection at trial to the timing of the arraignment | upraised a different issue. Accordingly, this assignment of error has not been properly preserved for review by this court.
 

 In his second assignment of error, Moss argues that the record fails to show that the jury was sworn in pursuant to La.C.Cr.P. art. 790. The State points to the trial transcript and has supplemented the record with a certified copy of the February 11, 2008 minute entry.
 

 The Louisiana Supreme Court has stated that appellate courts will be guided by the minute entries as to what transpires in the trial court, and incorrect entries may be corrected at any time.
 
 State v. Hoover,
 
 203 La. 181, 13 So.2d 784, 787 (1943).
 

 The supplemented February 11, 2008 minute entry clearly shows the jury “WERE DULY IMPANELED, ACCEPTED BY THE STATE AND DEFENSE AND
 
 SWORN. (Emphasis added.).
 
 Also, the trial judge noted, “the jury’s been sworn in.” Accordingly, this assignment of error has no merit.
 

 In his third assignment of error, Moss argues that the State failed to prove that the offense occurred in Orleans Parish, and, therefore, the district court did not have jurisdiction over the case.
 

 La. Const. Art. 1 § 16 guarantees the right to be tried in the parish where the offense occurred, unless venue is changed in accordance with law. The Louisiana legislature has codified this state constitutional guarantee in the Title XIX of the Louisiana Code of Criminal Procedure. La.C.Cr.P. art. 611(A) provides in pertinent part: “[a]ll trials shall take place in the parish where the offense has been committed.” La.C.Cr.P. art. 615 specifies the procedural device for invoking that right:
 

 Improper venue
 
 shall
 
 be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be 11,,proven by the state at trial, rather it shall be a jurisdictional matter
 
 *450
 
 to be proven by the state
 
 by a preponderance of the evidence
 
 and decided by the court in advance of trial.
 
 [3]
 

 Emphasis added. See also State v. Pierre,
 
 2004-0010, p. 3 (La.App. 4 Cir. 2/25/04) 869 So.2d 246, 248 (failure to file a pre trial motion to quash prohibits appellate review venue issue).
 

 Moss cites
 
 State v. Jackson,
 
 308 So.2d 265 (La.1975) for the proposition that a challenge to the sufficiency of proof of venue may be raised by a Motion for Directed verdict.
 
 Jackson
 
 addressed a pre-1988 version of La.C.Cr.P. art. 615. The law was changed by the 1988 amendment. Moss failed to challenge venue in a pretrial motion to quash. Accordingly, this issue has not been preserved for appellate review.
 

 In his fourth assignment of error, Moss argues that his equal protection and due process rights under La. Const. Art. I § 3 and the 6th and 14th Amendments to the U.S. Constitution were violated. He reasons that prosecuting him for a hate crime together with an aggravated battery charge led to the introduction of racially charged evidence that may have prejudiced the jury. In support thereof, Moss points to a note from the jury to the judge during its deliberation, wherein the jury asked: “To meet the requirements of [a] hate crime does the aggravated battery have to be solely based on race?”
 

 The State argues that this issue has not been preserved for appeal because it was not raised in a pre-trial motion to quash. The State also implicitly argues that | 15Moss has not succeeded in showing that the jury was prejudiced by the joinder of the two charges in this case, pointing to the evidence introduced to support his aggravated battery conviction and noting that the jury did not find him guilty of the race hate crime.
 

 La.C.Cr.P. art. 495 states:
 

 The objections of misjoinder of defendants or misjoinder of offenses may be urged only by a motion to quash the indictment.
 

 This Court has recognized that a motion to quash the indictment is the only vehicle for challenging the joinder of offenses allowed by La.C.Cr. P. art. 490.
 
 See State v. Simmons,
 
 2002-0253, p. 9-10 (La.App. 4 Cir. 5/14/03) 848 So.2d 58, 56-66 (Defendant moved for mistrial based upon misjoinder of offenses). The present record contains no motion to quash the indictment. Accordingly, Moss’ claim that the bill of information misjoined the hate crime charge and the aggravated battery charge has not been preserved and is procedurally barred from appellate review.
 

 In his fifth assignment of error, Moss argues that the district court erred procedurally in sentencing him prior to hearing his post-trial motions and resentencing him after hearing his post trial motions. He suggests no proper remedy and cites no authority for his complaint that the district court “constructively failed to correct the problem [of issuing sentence prior to hearing post trial motions] when it recast a new sentence adopting in toto the earlier tainted one.” Moss reasons that the new sentence denied him “fair adjudication of his sentence.” The State deems
 
 *451
 
 this argument “illogical,” but cites no legal authority.
 

 Procedurally, Moss was originally sentenced on March 28, 2008. However, over a week earlier, on March 10, 2008, Moss filed “Consolidated Post Trial Motions”, which included a “Motion for Post Verdict Judgment of Acquittal” and a |, (“Motion in Arrest of Judgment and for New Trial.” Moss’ counsel did not raise these motions at the March 28, 2008 hearing until after the district court had pronounced sentence. At that point, the district court noted that no motions were in the record. However, Moss’ counsel stated that the motions had been filed in open court on March 10, 2008, and the district court set a date to hear post trial motions. Moss filed a Motion to reconsider Sentence on April 3, 2008. The Consolidated Post-trial Motions and the Motion to Reconsider Sentence were argued on May 20, 2008. The district court denied these motions. The district court then vacated the March 28, 2008 sentence, adopted reasons stated at both the March 28, 2008 hearing and the May 20, 2008 hearing, and imposed a new sentence of eight years.
 

 Motions for a post judgment verdict of acquittal and for a new trial must be filed and disposed of prior to sentencing. La.C.Cr.P. art. 821 (post judgment verdict of acquittal)
 
 and
 
 La.C.Cr.P. art. 853 (new trial). The correct relief on review for failure to abide by these codal articles is vacating sentence and remand in order to dispose of the post trial motions and reissuing sentence.
 
 State v. Allen,
 
 2000-0013, p. 6 (La.App. 4 Cir. 1/10/01) 777 So.2d 1252, 1256,
 
 citing State v. Randolph,
 
 409 So.2d 554 (La.1981). The district court was aware of this rule, decided the post trial motions in question, vacated the March 28, 2008 sentence, and issued a new sentence. There is no reason to vacate the May 20, 2008 sentence as there was no violation of La.C.Cr.P. art. 821 or La. C.Cr.P. art. 853. No error was committed. This assignment of error has no merit.
 

 In his sixth assignment of error, Moss argues that his eight (8) year sentence for aggravated battery is excessive. In support thereof, he notes that he is a first time offender, and that the attack “represents a predictable weakness of human 117n ature in the context of an emotionally charged father-daughter-boyfriend relationship.” He also notes the minimal nature of Mr. Jones’ injuries and his expression of remorse at sentencing. Neither Moss nor the State analyzes any cases involving sentences for aggravated battery.
 

 In
 
 State v. Smith,
 
 2001-2574, pp. 6-7 (La.1/14/03), 839 So.2d 1, 4, the Louisiana Supreme Court set forth the standard for evaluating a claim of excessive sentence:
 

 Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that “[n]o law shall subject any person to ••• excessive ••• punishment.” (Emphasis added). Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness.
 
 State v. Sepulvado,
 
 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering.
 
 State v. Bonanno,
 
 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion.
 
 State v. Cann,
 
 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing
 
 *452
 
 discretion.
 
 State v. Walker,
 
 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462; cf.
 
 State v. Phillips,
 
 02-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906. See also
 
 State v. Johnson,
 
 97-1906 (La.3/4/98), 709 So.2d 672;
 
 State v. Baxley,
 
 94-2982 (La.5/22/95), 656 So.2d 973;
 
 State v. Batiste,
 
 2006-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810;
 
 State v. Landry,
 
 2003-1671 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235.
 

 In
 
 Batiste,
 
 2006-0875 at p. 18, 947 So.2d at 820, this Court further explained:
 

 An appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La.C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed.
 
 State v. Landry, supra;
 
 State v. Trepagnie, 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181.
 

 However, as noted in
 
 State v. Major,
 
 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813:
 

 The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
 

 If the reviewing court finds adequate compliance with art. 894.1, it must then determine whether the sentence the district court imposed is too severe in light of the particular defendant as well as the circumstances of the case, “keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.”
 
 State v. Landry,
 
 2003-1671 at p. 8, 871 So.2d at 1239. See also
 
 State v. Bonicard,
 
 98-0665 (La.App. 4 Cir. 8/4/99), 752 So.2d 184.
 

 A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.
 
 State v. Lobato,
 
 603 So.2d 739, 751 (La.1992). In determining whether a sentence is disproportionate to the offense, a reviewing court should consider the following factors: the nature of the offense and the offender, a comparison of the sentence with punishments imposed in other crimes, the legislative purpose behind the punishment, and a comparison of the punishment provided for this crime in other jurisdictions.
 
 State v. Telsee,
 
 425 So.2d 1251, 1253-1254 (La.1983). However, the only relevant question on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion [ i9in sentencing the defendant.
 
 State v. Cook,
 
 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959.
 

 Pursuant to La. R.S. 14:34, Moss faced a sentence of up to ten years at hard labor and a fine of up to five thousand dollars. In re-sentencing Moss on May 20, 2008, the district court noted that it was adopting the reasons for sentence enunciated at the March 28, 2008 hearing and supplementing with new reasons. At the March 28, 2008 hearing, Moss’ attorney noted “the letters from the district attorney, retired judge in Texas, on his behalf.” The district court read them. Moss also made a personal statement, expressing sorrow for his “mistake,” admitting that he used “poor judgment” and renouncing violence.
 

 The district court initially went through a statement of the case that finished with his noting that a pre-sentence investigation had been timely received and studied by
 
 *453
 
 the court prior to the hearing. The district court noted Moss provided a story similar to his trial testimony during an interview for the pre-sentence investigation. The court also noted that the jury did not find Moss credible and neither did the court, remarking that his trial testimony was “one of the worst perjury jobs that I had ever seen” and that it “was inconsistent with itself.” The district court noted that Moss felt he had acted in self defense and that he hoped for probation due to health issues. However, probation was not available. See La.C.Cr.P. art. 893(a)
 
 and
 
 La. R.S. 14:2(b)(5). Additionally, Moss had provided no medical records to substantiate claims that he suffered from severe bronchitis and several tumors. The district court considered the victim’s wish that Moss be punished “to the full extent of the law.” The district court noted that Mr. Jones suffered severe injury that required medical treatment and left him partially disfigured. Mr. Jones also opined that Ms. Moss had failed to testify due to the 1 anfact that Moss was her father. The district court believed that Moss had influenced Ms. Moss into not testifying, perhaps threatening her with denial of financial support for college. The district court acknowledged that Moss had no prior convictions or arrests. However, the district court also noted that Moss showed no remorse during the pre-sentence investigation, waiting until the March 28, 2008 hearing to show remorse. The district court rejected the possibility of boot camp due to Moss’ health issues and his age, which might hinder him from participating in the physical rigors of the program.
 

 The district court found it “reprehensible” that Moss had set Mr. Jones up by giving him a screwdriver earlier in the day and advising him that he would need it because New Orleans is a dangerous place. The district court also opined that Moss’ actions were planned and premeditated, in an effort to set up a defense. The district court rejected a suspended sentence, reasoning that the premeditated nature of Moss’ attack on Mr. Jones indicated he would commit another crime during any period of suspended sentence or probation. The district court also found that a lesser sentence would depreciate the serious nature of the offense, which was premeditated and demonstrated deliberate cruelty to and resulted in severe injury to the victim. The district court also found that Moss had attempted to influence Officer Dupree by trying to give him a gift: an autographed bible.
 

 At the May 20, 2008 hearing, Moss’ attorney pointed to the fact that this is his first offense. He also pointed to Moss’ work as a probation officer, his work for the Gideons, and that he coached high school football, to show that he is compassionate. Moss’ attorney also argued that the crime was not premeditated. Rather, he argued that Moss was angered at finding out that Mr. Jones and his |21 daughter had rented a hotel room. He also argued that Moss gave Mr. Jones the screwdriver to use on the bicycles that Ms. Moss and Mr. Jones rode.
 

 The district court noted that Moss’ anger at the renting of the hotel room was not introduced at trial. Rather, Moss argued self defense with a story that the district court and the jury found “very, very difficult to believe.” The district court also found the fact that the victim and Ms. Moss were minors at the time of the offense to be an aggravating factor. Based on the reasons enunciated on both March 28 and May 20, 2008, the district court sentenced Moss to eight (8) years at hard labor, with credit for time served and waived fines and fees. In doing so, the district court noted that the conviction was for a crime of violence.
 

 
 *454
 
 In
 
 State v. Hawkins,
 
 95-715 (La.App. 4 Cir. 8/29/95), 653 So.2d 715, this Court upheld a maximum ten year sentence for a first time offender convicted of aggravated battery. This Court found the defendant’s firing two rounds of .9 millimeter bullets from an assault rifle at the victim to be such an aggravating circumstance that would justify the maximum sentence.
 
 Id.,
 
 95-715 at p. 5, 653 So.2d at 718.
 

 In
 
 State v. Gorby,
 
 2003-1666 (La.App. 4 Cir. 2/11/04) 868 So.2d 193, the defendant beat his wife’s head against a toilet, dragged her to another room where he beat and kicked her repeatedly, and beat her on the head with a billy club or stick after putting duct tape over her mouth to stop her screaming.2003-1666 at p. 1, 868 So.2d at 194. This Court affirmed a ten year sentence, noting that “[njothing justifies this offense, which could have resulted in more serious injuries or death.”
 
 Id.,
 
 2003-1666, at p. 5, 868 So.2d at 196. Accordingly, the sentence was not disproportionate to the crime.
 

 |22In
 
 State v. Moore,
 
 490 So.2d 556 (La.App. 4 Cir.1986), this Court upheld an eight year sentence for aggravated battery. The defendant had attacked two women without provocation when they informed him that no pets were allowed in the apartment they were showing him.
 
 Id.
 
 at 557. The defendant held a knife to one woman’s throat before slamming a door on her hand several times.
 
 Id.
 
 After the first woman managed to flee, the defendant attacked the other woman.
 
 Id.
 
 He stabbed her three times.
 
 Id.
 
 This Court found that the trial court complied with La. C.Cr.P. art. 894.1 in its reasons and noted the defendant’s criminal history in affirming the sentence.
 
 Id.
 
 at 559-560.
 

 In
 
 State v. Rainey,
 
 98-436 (La.App. 5 Cir. 11/25/98) 722 So.2d 1097, the Fifth Circuit affirmed an eight year sentence for aggravated battery. The defendant argued that he was acting in self defense and that he was a first time offender.
 
 Id.,
 
 98-436 at p. 18, 722 So.2d at 1107. The Fifth Circuit reasoned that the trial court had not abused its discretion given the severity of the injuries and the fact that the defendant had been charged with a more serious crime than he was found guilty of.
 
 Id.
 
 These injuries included brain injury and a fractured jaw.
 
 Id.,
 
 989-436 at p. 6, 722 So.2d at 1100.
 

 In the case
 
 sub judice,
 
 we find that the district court adequately complied with La.C.Cr.P. art. 894.1. As the eases above demonstrate, first offenders have received maximum and near maximum sentences when the circumstances are so egregious that the trier of fact determined that a serious penalty needed be imposed. Furthermore, while we note that a different trier of fact may have imposed a lesser sentence, we do not find that the district court abused its vast discretion in sentencing Moss to eight (8) years considering the district court’s determination that Moss perjured himself, and that a lesser sentence would ^depreciate the serious nature of the offense — which the court determined was premeditated and demonstrated deliberate cruelty to and resulted in severe injury to the victim. This assignment of error is without merit.
 

 Moreover, we note that in Moss’ ninth assignment of error, below, he misplaces some of his arguments. While arguing that the district court improperly considered facts not admitted at trial, he also raises arguments that go to the district court’s discretion. Amongst his complaints below, the following raise concerns about the district court’s discretion in this case:
 
 [4]
 
 1) the district court abused its dis
 
 *455
 
 cretion in finding that Moss threatened his daughter into not appearing at trial; 2) the district court abused its discretion in finding that he posed a risk to society, given that he had no criminal history; and 3) the record does not support a finding that Mr. Jones suffered permanent injuries or significant economic loss.
 

 However, having already determined above that it was within the district court’s discretion to sentence Moss to eight (8) years and further considering that the district court enunciated several aggravating factors — the victim’s youth, allowing minors to consume alcohol, the district court’s impression that Moss had lied at trial, that the victim was disfigured,
 
 [5]
 
 and that this was a crime of violence — we cannot say that the district court abused its discretion in sentencing Moss.
 

 In his seventh assignment of error, Moss asserts that the pre-sentence investigation report (“PSI”) used by the district court in sentencing him was tainted by “prejudicial error.” He asserts that the request for the report reflected that he had been convicted of a race hate crime and asserts, “[a]s a matter of fairness, the Defendant should have been assigned a new investigator to prevent the erroneously 12,(reported race-hate crime conviction from prejudicing his sentencing investigation.” Moss cites no authority. Moreover, his factual assertion, that the request for the sentencing report somehow influenced the reporter, the report, and implicitly and ultimately the sentencing judge, is void of factual support.
 

 It is self-evident that the Fourteenth Amendment to the U.S. Constitution and Art. I § 3 of the Louisiana Constitution guarantee citizens equal protection under both U.S. and Louisiana law. Under the Louisiana constitution, government discrimination on the basis of race is prohibited.
 
 See State v. Granger,
 
 2007-2285 (La.5/21/08) 982 So.2d 779.
 

 The record shows no such race-based discrimination or influence occurred here. Moss points to a document that does not appear in the record. Nor has Moss moved to supplement the record. Nevertheless, he presents an authenticated copy of a February 11, 2008 “REQUEST FOR PRE-SENTENCE INVESTIGATION” that has the appearance of a docket master record. The document states that “WILLIAM MOSS [w]as by law lately convicted/submitted before the Criminal District Court for the Parish of Orleans of’ and lists the offenses he was originally charged ■with — aggravated battery and hate crimes. This document is not part of the record. However, even if it were, it fails to show racial bias or undue influence on Moss’ sentencing.
 

 Initially, the record in this case contained a February 11, 2008 minute entry. The State supplemented the record with this document on November 20, 2008. This minute entry contains the trial proceedings. At the end of the entry, it shows that the defendant was “FOUND NOT GUILTY BY THE JURY” of the hate crime. The entry also shows that the pre-sentence investigation “IN THIS MATTER IS SET FOR 3/11/08.” More importantly, careful examination of the | gnpre-sentence investigation report shows it contains no references to any race hate criminal charges or to any of Moss’ alleged racially-motivated tendencies. Accordingly, his assignment of error is both argued without any legal reasoning and is factually erroneous.
 

 
 *456
 
 In his eighth assignment of error, Moss asserts that the district court injected racial reasoning into its sentence. Citing the district court’s quoting the pre-sentence investigation report’s summary of an interview with Mr. Jones — the victim— the district court stated:
 

 Ms. Black [ (the author of the report) ] goes on to indicate that the victim would also like to get on with his life and put this incident and the Moss family in the past. During her interview with Mr. Jones over the telephone, Mr. Jones indicated to the agent that, and I quote, “Moss should be punished to the full extent of the law.” He stated that if it were the other way around, he would have been arrested the same night; not given the opportunity to turn himself in the next day. And trial testimony indicated that there was actually a lot more to that aspect of the case than the two sentences that Ms. Black devoted to that particular issue.
 

 Moss cites
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and
 
 Dawson v. Delaware,
 
 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992), to further support his argument. However, as the State points out, Moss misunderstands the rule from
 
 Apprendi.
 
 In
 
 Apprendi,
 
 the Court enunciated the rule that, “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U.S. at 490, 120 S.Ct. at 2362-63. Initially, Moss’ eight year sentence is below the “prescribed statutory maximum”.
 
 Quoting Id.
 
 Moreover,
 
 Ap-prendi
 
 was based on the Sixth Amendment right to trial by jury, as applicable to the states via the Fourteenth Amendment to the U.S. Constitution.
 
 Id.
 
 [ 26530 U.S. at 476, 120 S.Ct. at 2355. Moss complains of racial motivation in sentencing.
 

 In
 
 Dawson,
 
 the Court held that admission of evidence of the defendant’s membership in the Aryan Brotherhood during the sentencing phase of a capital crime violated the First Amendment to the U.S. Constitution. 503 U.S. 159, 112 S.Ct. 1093. The case was fact-specific. The Court reasoned that the admitted evidence “proved nothing more than Dawson’s abstract beliefs.”
 
 Id.,
 
 503 U.S. at 165, 112 S.Ct. 1093. The evidence as presented was determined to be admitted in an unconstitutional manner because it was irrelevant to the crime.
 
 Id.
 
 However, the Court noted that where evidence of racial hatred is relevant to the crime, it is admissible in capital sentencing proceedings.
 
 Id.,
 
 503 U.S. at 165, 112 S.Ct. at 1097,
 
 citing Barclay v. Florida,
 
 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). Moreover, the Dawson case was remanded to state court to determine whether admission of the evidence at issue was harmless error. 503 U.S. at 169, 112 S.Ct. at 1099.
 

 Here, the district court considered the entire record in sentencing Moss. In doing so, it noted the victim’s desire that Moss be punished as much as the law would allow. Mr. Jones’ opinion concerning “if it had been the other way around” does not specify a racial component. However, even if it does, it is relevant to allegations that the attack was racially motivated. See
 
 Barclay, supra.
 
 Moreover, any racial intonation in the pre-sentencing report’s summary of an interview with Mr. Jones does not appear to have impacted the district court’s decision and its presence — if improper-would be a harmless error. The district court did not use race or racial motivation as a reason in sentencing Moss. Accordingly, this assignment of error has no merit.
 

 127The ninth assignment of error is presented in an arcane manner. Basically,
 
 *457
 
 Moss asserts that the district court used evidence not in the record in sentencing him. However, Moss’ specific complaints about the district court’s factual determinations go more to the district court’s abuse of discretion. It is well established that, “[t]he sources of information from which a sentencing court may draw are extensive, and traditional rules of evidence are not bars to consideration otherwise relevant information.”
 
 State v. Washington,
 
 414 So.2d 313 (La.1982),
 
 see also Williams v. New York,
 
 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)(sentenc-ing judge is not confined to consider information received in open court). Moss complains that: 1) the district court demonstrated retaliatory intent in sentencing him when it asked, “[w]hat is this writ to the Fourth Circuit about or is it something you’d rather me not look at?;” 2) the district court combined its knowledge of Texas law enforcement with Moss’ assertion that he had law enforcement experience in finding Moss’ crime was premeditated; 3) the district court’s finding that he provided beer to or allowed minors to consume beer was not proven at trial; 4) the district court abused its discretion by finding that Moss perjured himself at trial; 5) the district court abused its discretion in finding that Moss threatened his daughter into not appearing at trial; 6) the district court abused its discretion by rejecting Moss’ allegations of poor health and using the same allegations to deny referral to “Boot Camp”; 7) the district court abused its discretion in finding that he posed a risk to society, given he had no criminal history; and 8) the record does not support a finding that Mr. Jones suffered permanent injuries or significant economic loss. Of these complaints, numbers five, seven and eight have already been addressed in the discussion of Assignment of Error Number six (6).
 

 |2Jn support of this assignment of error, Moss cites
 
 State v. Palermo,
 
 2000-2488, 2000-2499 (La.5/31/02) 818 So.2d 745 and
 
 Blakely v. Washington,
 
 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Both of these cases applied the rule enunciated in Apprendi,
 
 [6]
 
 This authority is misplaced because Moss was sentenced within the prescribed ten year sentencing range.
 

 Given that a district court is not restricted in its sources of information during sentencing, Moss’ second and third factual complaints above clearly have no merit. The district court did not abuse its discretion in relying on personal knowledge of Texas law enforcement practices. The district court’s finding that Moss allowed minors to consume alcohol is supported by Mr. Jones’ testimony that he consumed two beers while at the concert. Moss’ first complaint that the trial judge was openly biased toward him is not substantiated by the reference to seeking a writ application to this Court. The record shows that the district court used a considerable number of facts from the record in determining its sentence and does not show that the district court impinged upon Moss’ right to appeal or retaliated against him in issuing its sentence. Moss’ fourth complaint is without merit. The district court was well within its discretion as a fact finder in noting that it did not believe Moss to be credible.
 

 Moss’ sixth complaint involves his claims of illness. He argues that the district court erred in rejecting his eligibility for “boot camp” based on his health after rejecting Moss’ claims that his health prevents him from being able to be incarcerated. The district court’s finding was based on the pre-sentence investigation report.
 
 *458
 
 Therein, it was stated that Moss complained that he suffered | ¾¾⅛⅛ bronchitis and several tumors. The district court rejected this assertion as a mitigating factor because Moss provided no medical proof to substantiate his claim. Moreover, the report also recommended that Moss “has several health issues that may hinder him from participating in an intense physical training program.” There is no inconsistency in finding that Moss has failed to substantiate that his physical condition is so severe that he cannot survive in prison while finding that he is not fit enough to participate in intense physical training. This complaint shows no abuse of discretion. The main argument in this assignment of error — that the district court considered improperly admitted evidence— has no merit.
 

 In his tenth assignment of error, Moss argues that the district court erred in not advising him that he will earn diminution of sentence pursuant to La. R.S. 15:571.3(B)(2)(a). He cites no authority showing that the district court must advise him of this statute. This claim has no merit.
 

 In his final assignment of error, Moss argues that the record contains insufficient evidence to sustain his conviction. He argues that the jury was influenced by trial testimony that he made racially derogatory remarks toward Mr. Jones. He also argues that the State failed to produce an expert to show that the pliers actually caused Mr. Jones’ wounds. Moss further asserts that the State failed to produce medical evidence to show the cause of Mr. Jones’ injuries. Moss also asserts that the State failed to produce DNA evidence to prove that the pliers caused Mr. Jones injuries. Finally, Moss asserts that he testified that Mr. Jones was injured when he fell off of Moss’ truck during a scuffle.
 

 This Court has stated the following law in analyzing sufficiency of the evidence arguments:
 

 |3nIn assessing the sufficiency of evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 309, 99 S.Ct. 2781, 2784, 61 L.Ed.2d 560 (1979);
 
 State v. Rose,
 
 607 So.2d 974, 978-979 (La.App. 4th Cir.1992),
 
 writ denied,
 
 612 So.2d 97 (La.1993). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime.
 
 State v. Mussall,
 
 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution; it must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.
 
 Mussall, id.
 

 State v. Everett,
 
 99-1963, pp. 5-6 (La. 4 Cir. 9/27/00), 770 So.2d 466, 470.
 

 In
 
 Everett
 
 this Court also stated the following regarding the jury’s purview in making credibility determinations:
 

 It is not the function of the appellate court to reassess the credibility of witnesses or to reweigh the evidence; the reviewing court’s function is to determine the constitutional sufficiency of the evidence presented.
 
 State v. Johnson,
 
 619 So.2d 1102, 1109 (La.App. 4 Cir.
 
 *459
 
 5/13/93),
 
 writ denied,
 
 625 So.2d 173 (La.10/1/93). Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder.
 
 State v. Brumfield,
 
 93-2404 (La.App. 4th Cir. 1994), 639 So.2d 312;
 
 State v. Garner,
 
 621 So.2d 1203 (La.App. 4th Cir.1993),
 
 writ denied
 
 627 So.2d 661 (La.1993). Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency.
 
 State v. Jones,
 
 537 So.2d 1244, 1249 (La.App. 4 Cir.1989);
 
 Tibbs v. Florida,
 
 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness.
 
 Id.
 
 A trier of fact’s determination as to the credibility of a witness is a question of fact entitled to great weight, and l;nits determination will not be disturbed unless it is clearly contrary to the evidence.
 
 State v. Vessell,
 
 450 So.2d 938, 943 (La.1984).
 

 Id.,
 
 99-1963, pp. 8-9, 770 So.2d at 471.
 

 Moss was convicted of committing aggravated battery of Mr. Jones. Pursuant to La. R.S. 14:34, aggravated battery is “a battery committed with a dangerous weapon.” Battery is “the intentional use of force or violence upon the person of another.” La. R.S. 14:33. La. R.S. 14:2(3) defines a dangerous weapon as, “any gas, liquid, or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.”
 

 At trial, Mr. Jones testified that Moss hit him one time with a pair of pliers. Moss then hit him with his fists thereafter. Mr. Jones also testified that by the time the police arrived, he was bleeding from his head and had blood on his clothes. This testimony was corroborated by Sergeant Dupree, who testified that Mr. Jones was covered with blood and there was blood on the sidewalk when he arrived at the scene. The jury saw pictures of both Mr. Jones and the crime scene. This evidence supports the jury’s finding that Moss used a pair of pliers (dangerous weapon) to hit (use force or violence) Mr. Jones (upon the person of another).
 

 However, Moss argues that he provided a different version of events. During sentencing, the district court noted that the jury had not believed Moss. The district court did not find him believable either, considering his testimony to constitute perjury. This credibility determination goes to weight of the evidence, |Sj.not sufficiency and is clearly within the fact finder’s purview.
 
 See Jones,
 
 537 So.2d at 1249. The evidence presented at trial clearly supports the jury’s determination. This assignment of error has no merit.
 

 DECREE
 

 For the reasons stated above, the conviction and sentence of William Moss is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Mr. Richey erroneously testified that the incident in question occurred on May 1, 2006; however, the incident actually occurred on May 31, 2006.
 

 [2]
 

 . Presumably, Moss is referring to the beer that belonged to Mark, the beer that Moss took out of the ice chest before he retrieved it from Mark's car.
 

 [3]
 

 . This article was amended in 1988. Prior to the amendment, the article stated:
 

 “Improper venue
 
 may
 
 be raised by motion to quash, and in such case the motion shall be tried by the judge alone. Even if the issue of venue has been passed upon by the judge prior to trial, the state on the trial shall have
 

 the burden of proving proper venue
 
 beyond a reasonable doubt. Emphasis added.
 
 The old article did not limit a defendant to a motion to quash as an exclusive procedural device and placed a heavier burden on the State to prove venue."
 

 [4]
 

 . These "complaints” are enumerated as complaints five, seven and eight in Moss’ As
 
 *455
 
 signment of Error Number 9.
 

 [5]
 

 . A photograph was introduced at trial depicting a puncture wound to Mr. Jones' scalp.
 

 [6]
 

 . See assignment of error number eight.