30 So.2d 107

**STATE et al. v. TEXAS CO.**

No. 38335.

March 17, 1947.

Chas. H. Blish, Wiley G. Lastrapes and Milling, Godchaux, Saal & Milling, all of New Orleans, for defendant-appellant.

Fred S. LeBlanc, Atty. Gen., Robert R. Reid, 2d Asst. Atty. Gen., and John L. Madden, Sp. Asst. Atty. Gen., for plaintiffs-appellees.

McCALEB, Justice.

The State of Louisiana and the State Mineral Board are seeking to have the water bottoms of a large navigable bay or lake, known as "Hackberry Bay" or "Bay De Chene", excluded from the area covered by a certain mineral lease described as "State Mineral Lease No. 356" which was granted to the Texas Company on May 11, 1936. The litigation emanates from the following state of admitted facts.

On July 29, 1935, a group of residents of Jefferson Parish, composing the Lafitte Oil Syndicate, filed with the Governor an application for an oil, gas and mineral lease from the State under the provisions of Act No. 30 of the Extra Session of 1915, as amended by Act No. 315 of 1926, covering certain water bottoms of navigable lakes and streams located in that Parish. One of the bodies of water described in the application was "Bay De Chene". Upon receipt of the application, the Governor instructed the Register of the State Land Office to advertise for bids for a mineral lease to cover and embrace the water bottoms described in the application.

On April 15, 1936, the Register of the State Land Office prepared a Notice for Publication which was signed by the Governor. This Notice for Publication, when first prepared, described the body of water in controversy as "Bay De Chene" but, due to clerical error on the part of the newspapers in which the notice was published, i.e., Baton Rouge State Times and Jefferson Democrat, the bay was described as "Bayou De Chene" instead of "Bay De Chene".

Subsequent to the preparation and signing of the original Notice for Publication, the Register of the State Land Office, in keeping with the established custom of that office, prepared copies of the Notice for Publication and forwarded them to prospective bidders, to wit, oil companies and others engaged in the business of exploring for minerals. In this instance, copies of the notice were sent to Gulf Refining Company, the Louisiana Land and Exploration Company, C. M. Brenner, W. H. McFadden and the Texas Company. In all of these notices, the body of water was described as "Bay De Chene".

In response to the advertisement and Notice for Publication, five bids were submitted to the Governor on May 8, 1936. Among these was the bid of the Texas Company which was for a $78,000 cash

bonus, plus a $39,000 yearly rental, plus substantial royalty payments to the State for all minerals produced and saved. This bid was accepted by the Governor as being the most advantageous to the State. Accordingly, on May 11, 1936, the Governor executed, in favor of the Texas Company, State Mineral Lease No. 356 to all of the beds and bottoms of certain bodies of water particularly described therein. This lease, unfortunately (again through clerical error), described "Bay De Chene" as "Bayou De Chene".

The Texas Company did not discover the error until approximately six months after the execution of the lease. Upon becoming aware of it, the Company called it to the attention of the Register of the State Land Office and to the then Governor of the State, requesting a correction thereof. This was during the latter part of 1936, after the creation of the State Mineral Board by Act No. 93 of that year but prior to the organization of the Board. Some time later, on March 17, 1938, the Governor, acting in his capacity as Chief Executive and as Chairman of the State Mineral Board, executed and delivered to the Texas Company an amendment to State Mineral Lease No. 356 correcting the mistake in description of Bay De Chene, which amendment provided that Bay De Chene was also known as "Hackberry Bay".

The Texas Company has complied with all of the terms and conditions of the lease, which has been a profitable one to the

parties. Several oil wells have been drilled and completed and the State is receiving royalties therefrom. However, no exploration has been started with respect to the bottoms of Bay De Chene.

On April 2, 1938, Bagby Petroleum Corporation filed an application with the State Mineral Board requesting that it advertise for a mineral lease covering the beds and bottoms of "Hackberry Bay". The Texas Company protested this application on the ground that Hackberry Bay was already covered by State Mineral Lease No. 356, as "Hackberry Bay" was "Bay De Chene". After a hearing before the Mineral Board on April 12, 1938, the application of Bagby Petroleum Corporation was rejected.

In view of the fact that certain water bottoms embraced within lease No. 356 had not been developed by the Texas Company, the Attorney General demanded, on July 22, 1943, that explorations would have to be made or the beds and bottoms of various bays and other waters eliminated from the lease. Thereafter, on November 18, 1943, an agreement of Selection and Release was confected between the State Mineral Board and the Texas Company, whereby the latter retained certain areas covered by lease No. 356 and released other areas to the State. One of the areas retained by the Texas Company included the beds and bottoms of "Bay De Chene" or "Hackberry Bay".

On October 21, 1944, the Texas Company advised the State Mineral Board that, in

compliance with its obligations under lease No. 356, it intended to drill a well in "Bay De Chene or Hackberry Bay". Upon receiving this notice, the Mineral Board, acting upon the advice of the Attorney General's office, questioned the right of the Texas Company to drill in Bay De Chene because of the original error in description of the bay contained in the lease and also because the portion on which the drilling was to be conducted was west of the line appearing on the Lovell Map which was approved by this Court as the correct boundary line between the parishes of Lafourche and Jefferson in the case of Parish of Lafourche v. Parish of Jefferson, 206 La. 615, 19 So.2d 328.

The petition filed on behalf of plaintiffs is for an elimination of the water bottoms and beds of Hackberry Bay or Bay De Chene from the area covered by the mineral lease granted to the Texas Company. The relief prayed for is based on the following theories:

(1) That the advertisement for bids for a mineral lease to the bottoms of "Bayou De Chene" and the subsequent granting of a mineral lease thereto is ineffective as to "Bay De Chene" as Section 3 of Act No. 30 of 1915, E.S., required that a description of the land to be leased by the State be given in the newspaper publications of notice;

(2) That the attempted act of amendment or correction executed by the Governor on March 17, 1938 is null,

(a) Because the Governor was without right to undertake the correction of a material error in prior publications of notice, and

(b) Because no authority was vested in either the Mineral Board or the Governor, acting as Chairman of the Board, to amend a State mineral lease after the repeal of Act No. 9 of the Extra Session of 1928;

(3) That the amendment executed by the Governor, acting as Chairman of the State Mineral Board is, furthermore, invalid as he acted without authority or resolution passed by the Board;

(4) In the alternative, in the event it should be held that the leasehold covers the water bottoms of Bay De Chene, then the leasehold title does not and cannot cover the water bottoms of Hackberry Bay (where the defendant intends to explore) because those water bottoms are not one and the same, and that

(5) In any event the leasehold title of the defendant should not be extended to include any portion of the water bottoms of Bay De Chene, which is situated in Lafourche Parish, because the Publication of Notice was not advertised in Lafourche Parish, as required by the provisions of law.

The Texas Company resists the demands of the plaintiffs on the ground that the error in describing Bay De Chene in the advertisement and the lease was not material and could not defeat the true intention of the parties to the contract and that the act

of amendment executed by the Governor correcting the error is lawful and binding. Defendant further pleads that, since the error was committed by the State, while acting in its proprietary or quasi private capacity, and since it has accepted the benefits of the contract without complaint, plaintiffs are now estopped from asserting that the bottoms of Bay De Chene or Hackberry Bay are not included in the lease; that Bay De Chene, Hackberry Bay or Hackberry Lake are one and the same body of water and that, even though part of the Bay has subsequently been determined to be within the boundaries of Lafourche Parish, its right to the lease of the bottom of the entire body of water cannot be prejudiced, despite the failure to advertise the notice for publication in Lafourche Parish.

After a trial in the District Court on the foregoing issues, there was judgment sustaining plaintiffs' contention that Bay De Chene or Hackberry Bay is not affected by the mineral lease in favor of the Texas Company. This appeal has been prosecuted from the adverse decision.

■ The first question presented for determination is whether the error in describing Bay De Chene as Bayou De Chene, in the advertisement and the lease, is of such a substantial nature that it was not subject to correction. Act No. 30 of the Extra Session of 1915, under which the lease was executed, authorizes the Governor to lease lands and water bottoms of the State for the development of minerals and prescribes the procedure which must be followed in the granting of such leases. By Section 3 of the Act, the Governor, upon receipt of an application by a prospective lessee, may have the Register of the State Land Office investigate the property. It is conceded that the procedure set forth in the Act was complied with in the instant case but it is claimed by counsel for plaintiffs that the error in describing Bay De Chene as "Bayou De Chene" is fatal.

It is probable that this contention is based upon a misconception of our recent decision in State v. Texas Co., 205 La. 417, 17 So.2d 569, 570. In that case, the Texas Company had obtained a mineral lease upon "all the land belonging to the State within the game preserve and public hunting grounds created by Act 52 of 1921 (Ex.Sess.) and described therein, amounting to approximately 60,000 acres". Subsequently, the Governor executed an amendment to the contract so as to include all of the beds and bottoms of navigable waters in the area described in the original lease and it was stated in the act of amendment that it was the intention, at the time of the advertisement of the lands for lease and the acceptance of the bids thereon, that the State had offered and was leasing all of the lands owned by it including the beds of all streams, lakes, rivers and other bottoms within the limits of the game preserve. Some years after the execution of the amendatory instrument, the State brought suit for its annulment on the

ground that the Governor was without right or power to enlarge the area described in the original lease so as to include water bottoms not mentioned therein. The Texas Company filed an exception of no cause of action which was sustained in the court below but, on appeal, the judgment was reversed. We found in that matter that the lands which were advertised and leased to the Texas Company were those described in Act No. 52 of 1921, Ex.Sess., and that a reference to the description of the property included in that Act revealed that no mention was made of any navigable waters or water bottoms as part of the game preserve. Therefore, it was resolved that the Governor was without right to amend the lease so as to include therein property which was not described in the advertisement for bids and in the lease, even though it was contemplated by the parties at the time of the making of the contract that such property was to be included. Accordingly, the exception of no cause of action was overruled and the case remanded for further proceedings.

■ The distinction between the amendment in State v. Texas Co. and the one in the case at bar is manifest. There, the Governor attempted to enlarge the area covered under a lease by including therein property which had not been advertised or described. Here, the amendment to the lease executed by the Governor on March 17, 1938 merely rectified a clerical error in the description of a body of water which was actually included in the ad-

vertisement and the lease. If the amendment complained of effected a substantial change in the lease contract, or in case it were shown that third persons have been adversely affected or that the defendant has obtained a perference, it could not be sustained. But it is clear that the error contained in the Notice for Publication and the lease was of a typographical nature and that all persons, firms and corporations bidding on the property were not misled by the newspaper advertisement which described the bay as "Bayou De Chene." In fact, each and all of the five bids which were received by the State in response to the advertisement reflect that the bidders described the body of water as "Bay De Chene". Under the circumstances, it would be rather fatuous, we think, to hold that the Governor, as Ex Officio Chairman of the State Mineral Board, was powerless to correct a simple clerical error contained in the description of the land leased. Compare State ex rel. Brenner v. Noe, 186 La. 102, 171 So. 708.

■ The argument that corrections or amendments to existing leases are wholly unauthorized since the repeal of Act No. 9 of the Extra Session of 1928 is not impressive. While it is true that Act No. 93 of 1936, which created the State Mineral Board, does not expressly grant to the Board authority to make corrections in mineral leases, the broad powers vested in the Board by that statute are amply sufficient to include the right to amend or correct

errors appearing in mineral leases which result from a clerical mistake.

█ Counsel for plaintiffs also assert that, since the Governor, as Ex Officio Chairman of the State Mineral Board, was not authorized by resolution of that body to execute the amendment to the lease, the act is null. But the record reveals a course of conduct on the part of the Mineral Board from which a ratification of the Governor's action may be reasonably inferred. On November 18, 1943, the Board entered into an agreement of Selection and Release with the defendant wherein one of the areas retained by the latter embraced the bottom of Bay De Chene or Hackberry Bay. It is evident, from this agreement, that the Board approved the Governor's act in correcting the faulty description of Bay De Chene as a bayou.

█ Counsel further insist that a State Board, as distinguished from a private corporation, cannot ratify the acts of its agent. This is true as to ultra vires acts or those which the Mineral Board itself could not perform. However, such is not the case here.

█ The next contention of the plaintiffs that the lease does not cover Hackberry Bay because Hackberry Bay and Bay De Chene are different bodies of water has not been sustained. While it is true that most of the maps introduced in evidence describe the body of water as "Hackberry Bay", the record leaves little doubt that Hackberry Bay and Bay De Chene are one and the same. Residents within the near vicinity of the Bay testified that it is known as "Bay De Chene" and it has been consistently described as "Bay De Chene" by the Conservation Department in oyster leases. Plaintiffs have failed to produce any evidence to show that Hackberry Bay is not Bay De Chene but seem to expect the Court to so conclude just because the body of water is officially designated as Hackberry Bay on a number of maps.

█ Finally, counsel for plaintiffs urge that the portion of Bay De Chene or Hackberry Bay, which lies in the Parish of Lafourche, should be excluded from the lease for the reason that the Notice of Publication was not advertised in Lafourche Parish as required by Act No. 30 of the Extra Session of 1915. The short answer to this proposition is that, from the time of the application of the Lafitte Oil Syndicate in July of 1935 until June 26, 1944, when this Court handed down its decision in Parish of Lafourche v. Parish of Jefferson, supra, wherein the boundary line between Jefferson and Lafourche Parishes was established, no one knew or had reason to believe that Bay De Chene or Hackberry Bay was not located wholly within the Parish of Jefferson. Copies of the official State Hardee Maps of 1871

and 1894, which were offered in evidence, reveal that Bay De Chene or Hackberry Bay is located wholly within the Parish of Jefferson. It is the well-established law of this State that, where a boundary between two parishes has never been surveyed and established by conjoint survey and a certain section has been treated by parochial authorities and the owners as lying wholly within one of the parishes, the Court will apply the maxim "L'erreur commune fait le droit". See Cumming v. Boissatt, 2 La.Ann. 794; Booksh v. A. Wilbert Sons Lbr. & Shingle 'Co., 115 La. 351, 39 So. 9 and La Barre v. Burton-Swartz Cypress Co., 126 La. 982, 53 So. 113. The application of this maxim is especially pertinent in a case of this sort where the State is urging its own misconception or error as to the location of the land in an attempt to recant from its obligation based on what it considered to be a valid advertisement.

Because of the conclusion we have reached in this case, it has become unnecessary to discuss at length the plea of estoppel filed by the defendant. Suffice it to say that the plea is well taken. See State ex rel. Shell Oil Co. v. Register of State Land Office, 193 La. 883, 192 So. 519; Reeves v. Leche et al., 194 La. 1070, 195 So. 542.

The judgment appealed from is reversed and the suit is dismissed.