191 So.2d 631

STATE of Louisiana

v.

George BEARD and Walter E. Beard.

No. 48166.

Nov. 7, 1966.

Armand F. Rabun, Farmerville, for relators.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Ragan D. Madden, Dist. Atty., for respondent and appellee.

McCALEB, Justice.

Relators, having been indicted in Union Parish for the theft of hogs in violation of R.S. 14:67.1, filed *in limine* a plea to the jurisdiction of the court (as well as a motion to quash) averring that the alleged acts constituting the offense occurred entirely within Ouachita Parish. Upon trial of this plea, evidence was adduced by the State and the applicants respecting the place where the crime was allegedly committed and also whether this site was located within Union Parish—that is above the lower boundary line of that parish and the adjoining parish of Ouachita.

After hearing the evidence the judge overruled the jurisdictional pleas. In his reasons for judgment it was stated that, although the boundary line between the two parishes near the scene of the alleged crime had never been legally surveyed or fixed, there is an unmarked and indefinite line which has been for many years accepted by the citizens of the area as the boundary between the two parishes and that, for the purposes of fixing venue, this indefinite line should be accepted. Notwithstanding this ruling, the judge refrained from passing on the question of jurisdiction vel non. He observed in his written reasons that there was contradictory evidence on whether the alleged crime was committed on the Union Parish side of the accepted line or on the Ouachita Parish side of the accepted line and finally concluded that "* * * since the State must prove venue, the fact of the site of its commission, whether on the Union Parish side of the generally accepted line or on the Ouachita Parish side of said line *should be a matter*

*for the jury to determine: \* \* \*".* (Emphasis ours.)

In invoking our supervisory jurisdiction, relators complained, inter alia, of the trial judge's failure to make a decision of his own on the issue of venue. On this showing, we granted certiorari and the case has been argued and submitted for our decision.

■ It is fundamental under our law that the State in all criminal trials allege and prove the venue of the offense. Section 9 of Article 1 of the Constitution, as amended by Act 528 of 1962, declares in part: " \* \* \* all trials shall take place in the parish in which the offense is committed, unless the venue be changed \* \* \*"[1] Also the jurisprudence of this Court is now firmly settled that, since the question of venue in a criminal case is one of fact, which does not pertain to the guilt or innocence of the accused, it may be raised *in limine* and, when it is, there is no constitutional prohibition precluding either the trial judge or this Court from deciding the issue. State v. Moore, 140 La. 281, 72 So. 965 (1916); State v. Hogan, 157 La. 287, 102 So. 403 (1924); State v. Nugent, 191 La. 198, 184 So. 746 (1938); State v. Smith, 194 La. 1015, 195 So. 523 (1940); State v. Hart, 195 La. 184, 196 So. 62 (1940) and State v. Paternostro, 224 La. 87, 68 So.2d 767 (1953). Indeed, these cases hold that the defendant in a criminal prosecution has the right to have the question of venue decided before he is compelled to go to trial.

■ Accordingly, it was error for the judge to conclude that the issue of venue in this case was a matter to be determined solely by the jury. For, while it is true that venue of the crime must always be proved by the State to the satisfaction of the jury at the trial, this does not relieve the judge of his obligation to determine this issue of fact in advance of trial when it has been timely raised. See State v. Hart, supra; State v. Paternostro, supra and State v. International Paper Co., 201 La. 870, 10 So. 2d 685 (1942).[2]

■ We therefore pass on to a consideration of the evidence adduced below to determine whether it is sufficient to establish the venue of the alleged crime in Union Parish. For, since the judge has overruled the plea to the jurisdiction and the motion to quash, it is our function on review to determine whether his judgment is correct

---

1. This provision is repeated in R.S. 15:13, subd. A.

2. However, when the issue of venue has been determined by the jury adversely to the accused this Court may not review the sufficiency of the proof on a motion for a new trial but it may always consider, when properly presented, whether any evidence at all was submitted to the jury to establish venue, as proof of venue is a fact essential to conviction. State v. Mattio, 212 La. 284, 31 So.2d 801; State v. McLean, 216 La. 670, 44 So.2d 698 and State v. Sawyer, 220 La. 932, 57 So.2d 899.

even though we do not agree with the reason which prompted his ruling.

■ The evidence produced on trial of the exception to the jurisdiction shows that the boundary between the parishes of Union and Ouachita has never been surveyed on the ground and the two parishes have never undertaken a fixing of the boundary pursuant to the provisions of R.S. 50:221–228. Hence it was essential that secondary evidence be produced to establish venue. The witnesses testifying for the State, viz., Duke Rogers, Kelton Howard, George Roan and Ellzie Howard, who have lived for many years in the general area where the alleged crime was committed, declared that they were familiar with the place where the hogs were killed and that the site, estimated to be about 75 yards south of a certain pipeline, has always been considered to be within Union Parish.

In addition, Mr. Gurvis Barron, tax assessor for Union Parish, testified that all the land located within the governmental sections in which the alleged offense occurred has been, for as long as he has been tax assessor, and also for as long as he can remember, carried on the tax assessor's rolls of Union Parish and ad valorem taxes assessed thereon are paid to the tax collector of said parish.

On the other hand, relators and a member of their hunting party testified that, although they did not know the line between Union and Ouachita Parishes, they thought they were in Ouachita when they killed the hogs. One of them, George Beard, said that the first hog was shot 75 or 100 yards south of the pipeline and the others were shot at least 300 yards east of the pipeline.

Relators' principal witness was Mr. Cecil L. Albritton, a registered land surveyor, who testified in substance that he made a projection of a boundary line from Bayou Choudrant, as shown on a U. S. geological map of the Monroe North Quadrangle of Louisiana, which ran from the mouth of the Choudrant Creek to Parker's Landing. If this imaginary line were correct then, of course, according to relators' markings on the U. S. geological map as to where the hogs were killed, it would show that the alleged offense was committed in Ouachita Parish.[3] However, this asserted projection of the parish boundary is not acceptable for more than one reason, the first of which is that Albritton frankly admitted that he was not familiar enough with the area or the

3. However, according to this map, which shows an "approximate" boundary line between Union and Ouachita parishes, evidently drawn by the surveyor for the U. S. Department of the Interior, it would appear that the alleged crime was committed in Union Parish as the markings relators made on this map showing the place where they believed one of the hogs was killed are on the Union Parish side of this "approximate" line.

Ouachita River to know where Parker's Landing, which is named in the description of the official boundary of Union Parish, is or was located. Moreover, the witness has never surveyed the area on the ground and, therefore, his testimony is too speculative to be of probative value.

█ It is well settled in this State that where a boundary between two parishes has never been surveyed and established by conjoint survey, the testimony of inhabitants of the area in dispute is admissible and acceptable as proof of the boundary. In such cases the court will apply the maxim "l'erreur commune fait le droit". See State v. Texas Co., 211 La. 326, 30 So.2d 107; Comegys v. Stanolind Oil & Gas Company, 227 La. 657, 80 So.2d 110.

█ In the case at bar, the State has established by a clear preponderance of evidence that the site of the alleged crime was always considered to be within Union Parish.

Accordingly, we hold that the plea to the jurisdiction is not well founded. For, as stated in State v. Malone, 134 La. 779, 64 So. 711 (1914),[4] "A question of boundary is the same whether raised in a criminal or civil suit. Where the boundary between two

4. This authority, while correct in the application of the principle which we have quoted, is contrary to the later jurisprudence that the question of venue in a criminal case is a matter which should be determined by the judge in advance of

parishes has never been surveyed and established by a conjoint survey * * * and a certain section has been treated by the parochial authorities and the owners as lying wholly in one of the parishes, this court applied the maxim 'Communis error fecit jus'. See Booksh v. [A] Wilbert [Sons Lumber & Shingle Co.], 115 La. [351] 355, 39 So. 9 * * *".

For the reasons assigned, the judgment of the court below overruling the exception to the jurisdiction and the motion to quash is affirmed.

191 So.2d 634

**CITY OF NEW ORLEANS**

v.

*Emanuel COOK.*

No. 48372.

Nov. 7, 1966.

trial when it is timely raised. The court, in the Malone case, instead of determining the issue of venue, remanded the case with instructions to refer this question to the jury for its decision at the trial.