STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1241


STATE OF LOUISIANA

VERSUS

DRYEFUS MALBROUGH


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 122785.3
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.


**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

**Michael Harson**
**District Attorney, Fifteenth Judicial District Court**
**J.N. Prather, Jr.**
**Assistant District Attorney, Fifteenth Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Edward J. Marquet**
**Louisiana Appellate Project**
**P.O. Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Dryefus Malbrough**

**Mark O. Foster**
**Louisiana Appellate Project**
**P.O. Box 2057**
**Natchitoches, LA 71457-2057**
**(318) 572-5693**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Dryefus Malbrough**

**GREMILLION, Judge.**

Defendant, Dryefus Malbrough, along with three co-defendants, Terrance Sinegal, Lorenzo Angelle, and Courtney Romero, robbed the victim, Nicholas Carter, of $289.00. Defendant was charged by bill of information with armed robbery, a violation of La.R.S. 14:64. Following a jury trial, Defendant was found guilty of the responsive verdict, simple robbery. He was sentenced to serve seven years at hard labor, with credit for time served.

Defendant is now before this court on appeal, challenging his conviction in four assignments of error. We affirm the defendant's conviction, but remand the matter to the trial court with instructions to comply with the notification requirements of La.Code Crim.P. art. 930.8.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. There is one error patent.

The record does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. The trial court is directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof in the record that he received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## ASSIGNMENTS OF ERROR NUMBERS TWO, THREE, AND FOUR

Defendant argues that "[t]hese three assignments of error are linked together and when jointly considered establish insufficient proof to convict the defendant beyond a reasonable doubt."

> When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.

*State v. Hearold*, 603 So.2d 731, 734 (La.1992). Accordingly, these assignments of error are addressed first in the event Defendant is entitled to an acquittal.

The analysis for a claim of insufficient evidence is well-settled:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Mussall*, 523 So.2d 1305 (La.1988). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. *State v. Silman*, 95-0154 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. *State v. Bordenave*, 95-2328 (La.4/26/96), 678 So.2d 19, 20. It is not the function of an appellate court to assess credibility or re-weigh the evidence. *Id.*

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86.

Defendant was convicted of simple robbery, which is defined in La.R.S. 14:65(A) as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon." Defendant does not contest whether a robbery took place on the evening of December 15, 2008. He challenges only his identity as established by co-defendants Lorenzo Angelle and Courtney Romero.

### *Impermissible Hearsay*

Defendant maintains that "the trial court allowed the introduction of impermissible hearsay by allowing both [Officers Glenn Landry and Monika Porter] to swear to the jury what Courtney Romero and Lorenzo Angelle saw and

did despite untold objections by defense counsel" in order "to bolster the testimony of two blemished witnesses who actually committed the crimes." We note that Defendant's argument does not identify any places or pages in the record where hearsay objections were made during the officers' testimony and/or where the trial court ruled on the objections. Uniform Rules—Courts of Appeal, Rule 2-12.4 provides in pertinent part:

> The argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the record is not made.

Accordingly, we could disregard Defendant's argument as to assignment of error number three.

Moreover, even if the record revealed that Defendant raised a hearsay objection to the testimony of either officer, and the testimony was impermissibly admitted, we find that the error was harmless. Both Romero and Angelle testified at trial and were subject to cross-examination. Also, the evidence was cumulative with the other evidence presented, which is discussed below in greater detail. *See State v. Perkins*, 97-1119 (La.App. 3 Cir. 6/17/98), 716 So.2d 120. There is no merit to assignment of error number three.

***Statements of Lorenzo Angelle and Courtney Romero***

Defendant maintains that the trial court improperly allowed the introduction of Romero and Angelle's written statements which, in effect, "corroborated" Officer Landry and Officer Porter's versions of the events.

During the testimony of Officer Porter, the State moved to introduce the statements of Romero and Angelle, which were prepared as part of her report at the time the offense was committed. Counsel for Sinegal objected on the basis that introduction of the statements should be withheld until the respective individuals

3

testified at trial. The objection was overruled, and Defendant's counsel concurred in Sinegal's objection.

The statements were then disseminated to the jury, and Sinegal's counsel reiterated his objection to the introduction of the statements. Defendant's counsel stated:

> MR. ALONZO: Judge, I'd like to get something on the record before that goes to the jury. I'd like to put something on the record on behalf – in regards to those documents before they go to the jury.
>
> THE COURT: Gentlemen, I'll let you do that and those are statement from co-defendants.
>
> . . . .
>
> MR. ALONZO: Yes, Judge, I just wanted to note for the record our prior objections and I'd like to just state for the record, Judge, we have consistently objected today to the statements that have come in on the co-defendants because they've already pled and that – I understand the Court's position on that. But now, Judge, on what just occurred for the record was that the co-defendants written statements prior to their testimony was handed to the jury, the jury read it for approximately twenty-five minutes. Judge, that information is gone to the jury without our chance to cross-examine the witness. It's done. There's no way we can get that information back. The jury now has it. We object to that. Based upon that I think that's going to inherently prejudice the jury and I think it's something I just wanted to put on the record.
>
> . . . .
>
> MR. ALONZO: Judge, let me note also one of the basis for my objection for the record, Your Honor, is that the introduction of those statements clearly violates the best evidence rules. Those witnesses were here to testify. We could have had them testify live. As it was their statements went in to the jury and that was their testimony.
>
> THE COURT: I'm sure they're going to testify.

On appeal, Defendant does not challenge the introduction of the statements based on the best evidence rule but instead, maintains that the statements were hearsay evidence.

4

The State argues that the statements were offered under the hearsay exception of "explanation of conduct" concerning information received by the officer which led to the ultimate arrest of the accused. The State adds that an out-of-court statement is not hearsay if it was introduced to explain why a person took a particular course of action but not to prove the truth of the matter asserted. In support of its argument, the State refers to *State v. Turner*, 392 So.2d 436 (La.1980), wherein the defendant objected to the testimony of a criminal investigator regarding his reference to a report of possible criminal activity involving the defendant. The court found that the testimony was not offered to prove the truth of information received but to show why the investigator ordered a search.

The issue at hand, however, is the admissibility of Romero and Angelle's statements, not the testimony of the officers referring to a report or tip leading to their subsequent conduct. The record reflects that both Romero and Angelle testified at trial subsequent to the introduction of their statements. Defendant was afforded the opportunity to cross-examine these witnesses regarding the content of their respective statements. Accordingly, Defendant has not shown that the statements are hearsay evidence. La.Code Evid. art. 801(D)(1). Also, Defendant has not alleged or shown that he suffered any prejudice by the introduction of the statements at the time of Officer Porter's testimony rather than introducing them at the time Romero and Angelle testified.

## Sufficiency of Evidence

Defendant concludes that the jury relied on improper hearsay evidence in determining his guilt and that absent the inadmissible evidence, the evidence was insufficient to convict him. Defendant, however, has not shown that the trial court

5

allowed improper hearsay evidence or that the introduction of hearsay evidence played a significant role in identifying him as a perpetrator in the offense.

Even if the testimony of the officers and Romero and Angelle's statements had been excluded at trial, the testimony of Romero and Angelle identified Defendant as one of the masked perpetrators, a man with whom they were both acquainted prior to the offense and who was involved in the plan and eventual robbery of the victim. Romero stated that she was at Angelle's house when Angelle received a phone call from Defendant. Romero was fifteen years old at that time and was living with Angelle. Defendant indicated that he wanted to "hit a lick" or rob someone. Soon thereafter, Romero and Angelle met up with Defendant and co-defendant Terrance Sinegal, a/k/a "Trill." Romero then called the victim and arranged to meet him at her cousin's house to purchase Ecstasy pills for her cousin. Romero led the victim to believe that after taking the pills inside to her cousin, she would leave with the victim.

To get the pills and money from the victim, Romero believed that the three men planned to strong-arm the victim. Romero called the victim to ascertain his whereabouts, and he indicated he was about to arrive. The three men went to the back of the house. When the victim pulled up, Romero walked to his vehicle, opened the door, put her cigarettes and belongings on the seat, and asked him if he had the pills. The victim then got out of the vehicle and reached under his seat. Romero removed the keys from the ignition and ran under the carport. She told the three men that she had the keys, and they ran up to the vehicle. Defendant and Sinegal approached the driver's door wearing black hoodies and bandanas around their faces. When the victim saw them, he jumped back into the vehicle. Defendant and Sinegal put their guns in the victim's face and ordered him to give them the money and pills. Meanwhile, Angelle entered the vehicle on the

6

passenger side and went through the victim's console to see what he could find. According to Romero, the victim started throwing money. Romero returned the keys, and the victim drove away after the men instructed him to leave.

Afterwards, Romero and Angelle went to the home of Mennifer Sinegal, Defendant's girlfriend, where they met with Defendant and Sinegal to split the money. Of the $289.00 stolen, Angelle received $89.00, and Defendant and Sinegal each got $100.00. Romero and Angelle then returned to Angelle's house and went to bed without changing clothes.

About thirty to forty-five minutes later, the police arrived at Angelle's house. At first, Romero denied having any knowledge of the offense. After the police brought Romero to the station and contacted her mother, Romero gave a written statement. Romero was prosecuted through the juvenile system for her involvement in the offense. She admitted to the charge, principal to armed robbery, served three months in juvenile detention, and was placed in drug court where she was in treatment for nine months. Romero stated that she successfully completed the program and was clean at trial.

On cross-examination, Romero testified that she was eleven years old when she started using drugs. The victim began supplying her with drugs, including Ecstasy, cocaine, and marijuana, when she was twelve-to-thirteen years old. Prior to her relationship with Angelle, she had a sexual relationship with the victim. She used her prior relationship with the victim to lure him to the location of the robbery, with the understanding that she would leave with him to have sex. Romero decided to come clean about the robbery when she learned that the victim had given her cellphone number to the police. Lastly, Romero testified that Angelle was the father of her child.

7

Angelle also testified that he and Romero were living together at the time of the offense. They received a phone call from Defendant who wanted to "hit a lick," meaning he was broke and wanted money. Angelle and Romero then met up with Defendant and Sinegal at a Shell station where they came up with a plan to rob the victim. Romero would remove the keys from the victim's car, and the three men would confront him and take everything he had. Angelle stated that the use of weapons was not part of the plan.

When they arrived at the location, Angelle, Defendant, and Sinegal hid while Romero waited for the victim in the street. When the victim drove up, Romero walked to his vehicle and removed the keys. Next, Defendant and Sinegal ran from behind a tree wearing black hoodies and bandanas covering their noses and mouths. They were armed with guns. Defendant and Sinegal pointed their guns in the victim's face and yelled "give it up." Meanwhile, Angelle searched the vehicle. The victim gave the men $289 and a few Ecstasy pills. They left the scene and went to Mennifer's house, where they split the money and pills.

Afterwards, Angelle and Romero went back to his house and went to sleep. About an hour later, the police arrived. Angelle told the police that he had been sleeping since 8:30 p.m. and knew nothing about the offense. The police brought him and Romero to the police station. Once he arrived at the station, Angelle decided to cooperate and gave a written statement admitting to participation in the robbery. Angelle identified Defendant and Sinegal in open court as the two masked men who participated in the robbery. Angelle was charged with principal to armed robbery and pled guilty to the lesser charge of simple robbery. At the time of trial, Angelle had not yet been sentenced.

The State stresses that the testimony and statements of the victim also implicated Defendant in the offense. Further, the State maintains that Defendant tried to get the victim to change his original statement.

The victim testified at trial that he did not know the two armed men. Also, he did not identify Defendant in his first statement taken shortly after the offense. About a year after the offense, the victim implicated Defendant in a second statement taken by investigator, Roy Given, hired by counsel for Sinegal. The following colloquy took place:

RG: In your own words, could you explain to me what happened

NC: Courtney Romero called me for a ride. I went to pick her up she pulled my keys out my ignition and two men came up with guns and demanded money on the corner of Arthur and St. Antoine

RG: How much money did they take

. . . .

NC: Okay. Was any of the ….. name the men that were involved

NC: Dryefus, Lorenzo but Lorenzo didn't have a gun and I couldn't see the other man but he was bigger

RG: Was any of these men Terrance Sinegal

NC: No

RG: Can you explain ….. give me a physical description of each one of these men that held you up

NC: All I know is …. one had on no mask and I coulda [sic] see that was Lorenzo and the other one had on a mask and he had dreads and the other one had on a mask but he was bigger, he was big

RG: You are positive that none of them was Terrance

NC: Yeah, positive

RG: Is there anything else you would like to add

NC: No sir

9

One week before trial, the victim, incarcerated for an unrelated offense, received a verbal message from Defendant, also serving time in the same facility, that he wanted to talk to the victim. The victim was presented with a handwritten statement that he presumed was written by Defendant. The statement indicated that the victim wanted to dismiss the charges against Defendant. The statement was dated March 6, 2011, and reads:

> I Nick Carter on the above date and time chose not to pursue the charges of armed robbery on Mr. Dryefus Malborough [sic]. I Nick Carter was neither forced nor threatened to write this affidavit. The altercation between Mr. Malborough [sic] and I Nick Carter was just a misunderstanding and I Nick Carter again do not wish to pursue the charges on Mr. Malborough [sic]. Thank you for all of your help and concerns.

The victim signed the statement, his third and final statement regarding the offense. The victim denied being threatened by Defendant to sign the statement. He reasserted that he did not know Defendant prior to the offense. Lastly, the victim testified that he was on probation at the time of trial as the result of pleading guilty to attempted possession with intent to distribute cocaine.

On cross-examination, the victim maintained that drugs were not taken from him during the robbery, and he was not in possession of drugs at the time of the offense. When asked if he had ever provided drugs to Romero, the victim admitted he had "smoked" with her. He denied ever giving Romero Ecstasy pills.

The reason the victim gave his second statement was to prove that the physical description of the perpetrator believed to be Terrance Sinegal did not fit Sinegal's physical description. According to the victim, the perpetrator was big. Additionally, the victim recalled telling the prosecutor on October 26, 2010, that Sinegal had nothing to do with the offense. Again, the victim asserted that no one had threatened him.

On redirect examination, the victim admitted that about a year after the offense, he spoke with Sinegal's mother, who asked him to help her out. The victim then went to his attorney, who subsequently sent a private investigator to take his statement. The victim denied implicating Defendant in his statement, because he did not know Defendant at the time. The victim was then shown a copy of the statement wherein he had identified Defendant by name as a participant in the offense. The victim maintained that he could not see the faces of the men but learned that Defendant was there and had put a gun in his face.

Regarding his third statement, the victim stated he was taken from "the yard" to Defendant's pod where Defendant gave him a document to sign. The victim testified that the document had already been written when it was given to him to sign, and he did not compose the language in the statement.

Although there are discrepancies in the victim's testimony and statements, the victim implicated Defendant in the offense and never retracted his identification of Defendant as one of the perpetrators. Considering the testimony of co-defendants Angelle and Romero and that of the victim, we find the evidence was sufficient to prove that Defendant was a participant in the crime. Defendant does not challenge any elements of the offense other than his identity. Accordingly, there is no merit in assignment of error number two.

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant maintains that a review of the record reveals no reference or testimony as to the venue of where the offense of armed robbery occurred. As such, Defendant contends that the prosecution failed to prove the venue of the instant offense.

In support of his argument, Defendant refers to *State v. Beard*, 249 La. 811, 191 So.2d 631, 632 (1966) (citations and footnote omitted), wherein the court stated:

> It is fundamental under our law that the State in all criminal trials allege and prove the venue of the offense. Section 9 of Article 1 of the Constitution, as amended by Act 528 of 1962, declares in part: '* * * all trials shall take place in the parish in which the offense is committed, unless the venue be changed * * *' Also the jurisprudence of this Court is now firmly settled that, since the question of venue in a criminal case is one of fact, which does not pertain to the guilt or innocence of the accused, it may be raised In limine and, when it is, there is no constitutional prohibition precluding either the trial judge or this Court from deciding the issue. Indeed, these cases hold that the defendant in a criminal prosecution has the right to have the question of venue decided before he is compelled to go to trial.

We note that the bill of information filed against Defendant indicates that the offense occurred in Lafayette Parish. Defendant did not object to the bill of information or challenge the venue as stated in the bill of information in a pre-trial motion to quash.

In *State v. Moss*, 08-1079, pp. 13-14 (La.App. 4 Cir. 7/22/09), 17 So.3d 441, 449-50, *writ denied*, 09-1895 (La. 4/9/10), 31 So.3d 382 (footnote omitted), the court explained:

> La. Const. Art. 1 § 16 guarantees the right to be tried in the parish where the offense occurred, unless venue is changed in accordance with law. The Louisiana legislature has codified this state constitutional guarantee in the Title XIX of the Louisiana Code of Criminal Procedure. La.C.Cr.P. art. 611(A) provides in pertinent part: "[a]ll trials shall take place in the parish where the offense has been committed." La.C.Cr.P. art. 615 specifies the procedural device for invoking that right:
>
>> Improper venue *shall* be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state *by a preponderance of the evidence* and decided by the court in advance of trial.

12

*Emphasis added.  See also State v. Pierre*, 2004-0010, p. 3 (La.App. 4 Cir. 2/25/04) 869 So.2d 246, 248 (failure to file a pre trial motion to quash prohibits appellate review venue issue).

Moss cites *State v. Jackson*, 308 So.2d 265 (La.1975) for the proposition that a challenge to the sufficiency of proof of venue may be raised by a Motion for Directed verdict.  *Jackson* addressed a pre-1988 version of La.C.Cr.P. art. 615.  The law was changed by the 1988 amendment.  Moss failed to challenge venue in a pre-trial motion to quash.  Accordingly, this issue has not been preserved for appellate review.

Likewise, we find that Defendant herein did not preserve his challenge of venue for appellate review.

## DISPOSITION

Defendant's conviction is affirmed; this matter is remanded to the trial court with instructions to comply with the notification requirements of La.Code Crim.P. art. 930.8.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS**.