# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-81

**STATE OF LOUISIANA**

**VERSUS**

**JEFFERY LYNN JONES**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 330,873
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, John E. Conery, and Van H. Kyzar, Judges.

**AFFIRMED.**

**J. Phillip Terrell, Jr.**
**District Attorney**
**Catherine L. Davidson**
**Assistant District Attorney**
**Post Office Drawer 1472**
**Alexandria, LA   71309**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
  **State of Louisiana**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**Post Office Box 52988**
**Shreveport, LA   71135**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Jeffery Lynn Jones**

**AMY, Judge.**

The defendant's niece alleged that the defendant committed various acts of sexual touching and vaginal intercourse against her while she was six to nine years of age. Although the State charged the defendant with first degree rape, a jury ultimately found the defendant guilty of third degree rape. The trial court thereafter imposed a sentence of twenty years at hard labor, doing so without benefit of probation, parole, or suspension of sentence. The defendant appeals. For the following reasons, we affirm.

## Factual and Procedural Background

The present matter arose after D.C.[1] (born in 2001) reported in March 2016, that when she was ages six to nine years of age, her uncle, Jeffrey[2] Lynn Jones,

---

[1] We refer to the subject minor by use of her initials pursuant to La.R.S. 46:1844(W), which provides:

> W. Confidentiality of crime victims who are minors, victims of sex offenses, and victims of human trafficking-related offenses.
>
> (1)(a) In order to protect the identity and provide for the safety and welfare of crime victims who are minors under the age of eighteen years and of victims of sex offenses or human trafficking-related offenses, notwithstanding any provision of law to the contrary, all public officials and officers and public agencies, including but not limited to all law enforcement agencies, sheriffs, district attorneys, judicial officers, clerks of court, the Crime Victims Reparations Board, and the Department of Children and Family Services or any division thereof, shall not publicly disclose the name, address, or identity of crime victims who at the time of the commission of the offense are minors under eighteen years of age or of victims of sex offenses or human trafficking-related offenses, regardless of the date of commission of the offense. The confidentiality of the identity of the victim who at the time of the commission of the offense is a minor under eighteen years of age or the victim of a sex offense or human trafficking-related offense may be waived by the victim. The public disclosure of the name of the juvenile crime victim by any public official or officer or public agency is not prohibited by this Subsection when the crime resulted in the death of the victim.

As relevant to this matter, the term "sex offense" includes "the perpetration or attempted perpetration of … any offense listed in R.S. 15:541(24)." *See* La.R.S. 46:1844(W)(2)(b). Louisiana Revised Statutes 15:541(24) includes the charged offense of first degree rape, as well as the lesser included offense for which the defendant was convicted, third degree rape.

repeatedly touched her inappropriately. The record demonstrates that the defendant was born in 1968. After D.C.'s initial report to her older brother and, in turn, her mother, an official complaint was made with the Alexandria Police Department. Following a forensic interview at The Advocacy Center, the defendant was arrested.

By bill of indictment filed on September 29, 2016, the State charged the defendant with one count of first degree rape, a violation of La.R.S. 14:42, and one count of aggravated crime against nature, a violation of La.R.S. 14:89.1. The matter proceeded to a jury trial in October 2017. At the proceedings, and in addition to D.C.'s testimony regarding the alleged offenses, the State presented the testimony of a friend and schoolmate of D.C., who testified that D.C. confided in her that she had been "touched" when she was younger. The friend explained that the conversation occurred when she and D.C. were in the seventh grade. The defendant lodged a hearsay challenge to the friend's testimony which the trial court denied. Further, the State presented the testimony of D.C.'s twenty-eight year old brother, who explained that D.C. informed him of the alleged inappropriate touching a year earlier. The brother testified that D.C. informed her mother of the allegation.[3] As with D.C.'s friend, the defendant challenged D.C.'s brother's statement as hearsay, which the trial court again denied.

Finally, the State presented the testimony of two investigating officers from the Alexandria Police Department, Corporal Matthew Cross and Detective Matthew Harrison. The trial court again overruled hearsay objections to each

---

[2] The caption and cover of the appellate record in this matter report the defendant's forename as "Jeffery." While we maintain that caption, this opinion references the defendant as "Jeffrey" given its usage in the minutes, indictment, pre-trial instruments, and the trial transcript.

[3] The transcript indicates that D.C.'s mother informed the Alexandria Police Department, resulting in the underlying investigation.

2

officer's testimony, which related to their roles in the investigation. Upon resting its case, the State dismissed the charge of aggravated crime against nature.

In his own case, the defendant presented various witnesses, including D.C.'s mother and numerous family members. The latter denied having witnessed the defendant act inappropriately. Additionally, the defendant testified on his own behalf, denying the allegations.

Following deliberations, the jury returned a responsive verdict of guilty of third degree rape. In subsequent proceedings, the trial court denied the defendant's motion for new trial in which the defendant, in part, challenged the trial court's rulings on his hearsay objections. Afterwards, the trial court turned to sentencing and ordered the defendant to serve twenty years imprisonment at hard labor, with credit for time served. The trial court ordered that the sentence be served without benefit of probation, parole, or suspension of sentence. The trial court subsequently denied both the defendant's motion for new trial as well as his motion to reconsider sentence.

The defendant appeals, assigning the following as error: "The Trial Court erred when it allowed, over defense objection, inadmissible hearsay testimony from three witnesses that D.C. had reported to them that Mr. Jones molested her."

**Discussion**

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, we have reviewed this matter for errors patent on the face of the record. Louisiana Code of Criminal Procedure Article 920(2) defines such an error as one "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." Following such review, we find no errors patent.

*Hearsay*

In his only assignment of error, the defendant observes that the State offered testimony from four witnesses who "related to the jury D.C.'s reporting of allegations of abuse." Reference to the transcript indicates that, in this regard, the defendant lodged hearsay objections to the testimony of D.C's friend, D.C.'s older brother, and Corporal Cross. With regard to Detective Harrison, the defendant lodged a hearsay objection to Detective Harrison's testimony regarding D.C.'s mother's complaint to him, not an objection to D.C.'s relating of details to him. The trial court overruled each of those objections.

Friend's Testimony

Notwithstanding the defendant's assertion at trial that D.C.'s friend's testimony was hearsay, the defendant suggests in his brief to this court that the trial court "was correct when it allowed testimony that D.C. first reported the alleged molestation to [her] best friend." By this now differing construct, the defendant argues that such a report constituted D.C.'s initial complaint of sexually assaultive behavior pursuant to La.Code Evid. art. 801(D)(1)(d). Classifying such an initial complaint as "not hearsay," Article 801(D)(1)(d), provides that:

> **D.** **Statements which are not hearsay**. A statement is not hearsay if:
>
> **(1)** **Prior statement by witness.** The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:
>
> . . . .
>
> (d) Consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.

After now arguing that D.C's friend's testimony was not hearsay under this framework, the defendant references La.Code Evid. art. 801(D)(1) cmt. (e) (1988),

which provides, in part that: "It is only the initial complaint by the victim, whether made to a family member, policeman, or other person, that is defined as non-hearsay under this provision. Subsequent complaints or reports about the same crime would not be admissible under it." Thus, according to the defendant's argument on appeal, since D.C.'s friend's testimony[4] constituted an initial report of sexually assaultive behavior, the trial court erred in allowing testimony from D.C.'s older brother, Corporal Cross, and Detective Harrison regarding D.C.'s complaints.

However, given that the defendant's argument now differs on appeal, there is no indication in the record that the trial court was presented with the issue of whether D.C.'s friend offered testimony regarding the initial complaint of sexually assaultive behavior. *See* Uniform Rules—Courts of Appeal, Rule 1-3 (providing, in part, that: "The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise."). Additionally, and to the extent the defendant maintained at trial that the testimony was admitted in error as

---

[4] The defendant contends in brief that: "D.C. told [her friend] that her paternal uncle touched her one time when she was in the bathroom." Reference to the transcript more fully indicates that the friend testified as to D.C.'s account as follows:

> Q.   [D]id she give you any specific details about what she was referring to?
>
> A.   No, she just said that she had been touched by someone when she was younger.
>
> Q.   [D]id she tell you any specific instances about that - - about being touched?
>
> A.   She said that she remembered one time when she was in the bathroom. She said that he came in and she didn't go in to detail about it. She would say like she was watching cartoons one time and it happened.

hearsay, we note the trial court provided a limiting instruction regarding D.C.'s friend's testimony as follows:

> I'm go[ing] to give you an instruction that you're to consider that it's not for the truth of the matter that the crime alleged happened. It's only to prove … that the statement was made to the girls. Okay? Just because she says this happened doesn't mean that it is, it is the truth. I just wanted y'all to hear that so you can judge what relevance you want to give it.

Brother

In contrast, the trial court provided no limiting instruction following the hearsay objection lodged by the defendant in relation to the testimony of D.C.'s older brother. That lack of instruction is consistent with a finding that his statement concerning D.C.'s complaint constituted the initial complaint of sexually assaultive behavior pursuant to La.Code Crim.P. art. 801(D)(1)(d) and was, accordingly, not hearsay. While D.C.'s complaint to her friend was temporally her first complaint, we find that the circumstances support a finding that her report to her adult brother constituted the initial complaint of sexually assaultive behavior for purposes of La.Code Evid. art. 801(D)(1)(d) insofar as she confided to him as a trusted adult. *See State v. Ste. Marie*, 97-0168, pp. 11-12 (La.App. 3 Cir. 4/18/01), 801 So.2d 424, 433 (wherein a panel of this court determined that, although a juvenile victim first made a complaint of sexual assault to "a little girl in the neighborhood[,]" the victim's subsequent statement to her mother constituted the initial complaint of sexually assaultive behavior for purposes of La.Code Evid. art. 801(D)(1)(d) as it "was the first complaint made to a friendly adult.").

Corporal Cross

Next, we find no error in the trial court's rejection of the defendant's hearsay objection lodged during the testimony of Corporal Cross, who explained that he

6

filed the initial report after being informed that the formal complaint was made. When asked what happened when he arrived at D.C.'s home, he explained that D.C.'s mother "stated that her daughter, [D.C.], wanted to come forward[.]" Following the defendant's subsequent objection, the trial court overruled the objection, instructing the jury as follows:

> I am going to … overrule your objection. Once again … this is not to be accepted for the truth of the matter. It's only to show why the police did what they did. Okay? He's go[ing] to say what she did, and then he's g[oing to] say what he did based upon that. It's not for the truth of the matter. It's just to show you why he did what he did.

Following that limiting instruction, and upon questioning by the State, Corporal Cross explained:

> A.     [D.C.'s mother] stated that [D.C.] had come forward to her and, and advised her that when she was about approximately six years of age that her Uncle Jeffrey had sexually assaulted her.
>
> Q.     Okay. Um, and did you make contact with [D.C.] at that time?
>
> A.     I did. And she confirmed, uh, the statements that her mother was making also to me.
>
> Q.     Okay. And what did you do with that information, Officer?
>
> A.     Uh, I called my supervisor, Sergeant Wesley Matthews, and notified him of the situation, and I believe he made contact with the Detective on call as well.
>
> Q.     Okay. Did you play any other role in the investigation?
>
> A.     Uh, I took the initial statement and wrote it down, uh, what she had told us and everything after that was handled by the Detective Division.
>
> Q.     Okay. And do you recall exactly what she told you?
>
> A.     She told me that she was fifteen at the time when I made contact with her. She told me that at, at approximately six years of age about seven or eight times I believe it was she had been sexually assaulted and forced to have sex with her uncle.

Q.	Okay.	And at that point, uh, were you relieved of the investigation or was it turned over to another Detective?

A.	Yes, sir.	Uh, once I took that statement and I made my initial report, it was then turned over to the, the Detectives.

Q.	Okay.	Did that conclude your role in the investigation?

A.	Yes, sir.

As reflected by the trial court's ruling, the supreme court has explained that a police officer's testimony regarding information provided by another individual may not be considered hearsay if it is offered to explain the course of the investigation of the offense. *State v. Maise*, 00-1158 (La. 1/15/02), 805 So.2d 1141, *overruled in part on other grounds by State v. Bernard*, 09-1178 (La. 3/16/10), 31 So.3d 1025. We further note that the defendant did not re-lodge his objection upon Corporal Cross's testimony regarding D.C.'s precise statement to him. *See* La.Code Crim.P. art. 841.

On a final point, we return to the defendant's suggestion that La.Code Evid. art. 801(D)(1) cmt. (e) (1988), cited above, indicates that witnesses offering testimony inclusive of the victim's reporting of sexually assaultive behavior is impermissible following the admission of testimony relating to an initial complaint of the behavior. However, reference to comment (e) indicates that it anticipates that: "Subsequent complaints or reports about the same crime would not be admissible under it." In this case, none of the subject witness testimony, other than that of D.C.'s older brother, was found admissible as "not hearsay" under Article 801(D)(1)(d). Rather, the trial court expressly instructed the jury that it was not to consider Corporal Cross's testimony regarding the statement for the truth of the matter asserted.

Detective Harrison

The final witness challenged by the defendant is Detective Harrison, who, like Corporal Cross, provided testimony regarding the course of his investigation following assignment to the case. Detective Harrison explained that he interviewed D.C.'s mother, but did not interview D.C.. When the defendant advanced a hearsay objection after Detective Harrison related a statement provided by D.C.'s mother, the trial court expressed initial reservation as to the perceived inquiry. However, the trial court ultimately overruled the hearsay objection upon being informed that the State sought to inquire only as to what Detective Harrison learned from speaking with D.C.'s mother. Detective Harrison responded that: "I just informed her that we're go[ing to] set her daughter up for an interview." He further explained that: "I wasn't go[ing to] get - - ask her … to get in depth into the case or anything of that nature. We set them all up for interview, allow them to be interviewed, obtain a taped statement from her, and then we go from there." Thus, we conclude that like the testimony of Corporal Cross, Detective Harrison's statement regarding that initial interview pertained to the course of the investigation. *See Maise*, 805 So.2d 1141.

As noted, Detective Harrison specifically testified that he did not interview D.C., but that he only viewed D.C.'s interview with the forensic interviewer.[5] To the extent he referenced that interview, the defendant did not raise a question regarding hearsay. The defendant instead objected on grounds of "opinion" and "speculation" when the State inquired whether Detective Harrison believed what D.C. said during the forensic interview. The trial court denied that objection. On

---

[5] Detective Harrison explained that, in the event crime victims are juveniles, "I do not interview them. Uh, we send them over to the … Child Advocacy Center, and they're interviewed by a forensic interviewer, … and they're trained to interview juveniles."

review, we do not disturb the trial court's ruling. *See* La.Code Evid. art. 701(1) (providing that a lay witness may testify about his or her opinion that is "[r]ationally based on the perception of the witness[.]"). *See also State v. Carter*, 10-0614 (La. 1/24/12), 84 So.3d 499, *cert. denied*, 568 U.S. 823, 133 S.Ct. 209 (2012).

<u>Harmless Error</u>

Finally, we observe here that, even upon a determination that the subject testimony constituted hearsay, the introduction of such hearsay would be viewed as harmless insofar as the jury's verdict was surely unattributable to the error. *See State v. Lucky*, 96-1687 (La. 4/13/99), 755 So.2d 845, *cert. denied*, 529 U.S. 1023, 120 S.Ct. 1429 (2000). The jury found the defendant guilty of third degree rape, an offense requiring evidence of anal, oral, or vaginal sexual intercourse. *See* La.R.S. 14:43. In contrast to the complained of witness statements, which pertained generally to allegations of touching or sexual assault, the jury heard D.C.'s pointed testimony regarding allegations of intercourse. *See State v. Campbell*, 06-0286 (La. 5/21/08), 983 So.2d 810 (wherein the supreme court explained that even if an investigating detective's testimony regarding his investigation was impermissible hearsay, any such error was harmless as the testimony was cumulative of the more detailed testimonies of witnesses who served as the basis for the officer's investigation), *cert. denied*, 555 U.S. 1040, 129 S.Ct. 607 (2008). *See also State v. Malbrough*, 11-1241 (La.App. 3 Cir. 6/20/12), 94 So.3d 933 (wherein a panel of this court explained that any impermissible hearsay elicited from investigating officers regarding statements of the defendant's co-perpetrators was harmless error as the testimony was cumulative of other evidence presented and the co-perpetrators were subject to cross-examination).

Significantly, D.C.'s testimony was subject to cross-examination. *See Maise*, 805 So.2d at 1152 (wherein the supreme court explained that "[h]earsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability.").

Accordingly, we conclude that this assignment lacks merit.

## DECREE

For the foregoing reasons, the conviction and sentence of the defendant, Jeffrey Lynn Jones are affirmed.

**AFFIRMED.**